## DAUGHTRY *v.* COBB.

No. 12848.   October 13, 1939.

*R. Lee Moore, E. K. Overstreet,* and *D. C. Jones,* for plaintiff in error.

*T. J. Evans,* contra.

REID, Chief Justice. B. W. Miller, administrator of the estate of C. L. Daughtry filed a petition alleging substantially the following facts: Marie Daughtry is the daughter of C. L. Daughtry, and as such is entitled to one seventh of his estate. On October 20, 1937, Albert L. Cobb served petitioner with notice of a general power of attorney executed by Marie Daughtry on October 15, 1937, which was duly recorded in the office of the clerk of the superior court. At the time of service of the notice "Albert L. Cobb put your petitioner on notice not to deal with the said Marie Daughtry in any manner whatsoever in connection with her in-

terest in said estate, but informed . . petitioner that he . . was the only person duly authorized to act for or in behalf of the said Marie Daughtry or to receive her interest or share of said estate or any part thereof." On December 7, 1937, Marie Daughtry served petitioner with a written instrument executed by her, whereby she revoked the general power of attorney executed to Cobb, setting forth that the same was procured by fraud; and further notified petitioner not to deal with Cobb for her or on her behalf in any matter concerning her interest in said estate. Petitioner has on hand a considerable sum of money belonging to said estate, and desires to distribute it in the sum of $7000 to each heir. He is an innocent stakeholder of the share of Marie Daughtry, and can not determine, without hazard to himself and his sureties, to whom he should pay said sum as between the conflicting claims. He "has no objection to dealing with or recognizing either of the conflicting parties in said cause, if and when so directed by appropriate order of the court." It was prayed that an order be passed, "requiring said defendants to interplead herein and set forth their several claims as to who is the rightful party to receive the funds and to represent the said Marie Daughtry in the distribution of said estate." Attached to the petition were the power of attorney and the revocation thereof. The power of attorney appointed Cobb the agent, legal representative, and attorney in fact of Marie Daughtry, and in substance authorized him to represent her and act for and in her stead in all matters in connection with the due administration of the estate of her deceased father, in respect to any and all of her rights therein. On this petition an order was duly issued requiring the claimants to interplead. Both responded. We gather from the record that at the trial Cobb abandoned any insistence that he was entitled to actually represent Marie Daughtry and to receive all moneys due or to be paid her by the administrator, notwithstanding her revocation of the power and the contract of employment. Instead he merely claimed the right to recover damages for a breach of contract, and to have the court, as a court of equity, apply the amount due to Marie Daughtry by the administrator applied in satisfaction of his claim. The jury returned a verdict for Cobb in a named sum. Marie Daughtry excepted to the overruling of her motion for new trial. This court has heretofore affirmed the judgment overruling a motion by Cobb for new trial. See *Cobb* v. *Daughtry*, 188 *Ga.* 70 (2 S. E. 2d, 638)..

■ It appears from the evidence that Marie Daughtry (hereinafter referred to as the defendant) was a resident of Philadelphia, Pennsylvania, at the time the power of attorney and the contract providing for compensation for services to be rendered thereunder were executed, and that the contracts were executed in New York City. The special grounds of the motion for new trial relate to the admission of testimony on behalf of Cobb (hereinafter referred to as the plaintiff), to the general effect that the "moving consideration" to the defendant in the execution of the contracts was that for certain reasons she did not desire to return to the State of Georgia, and accordingly desired to have some one here to represent her and receive any moneys due to her, and perform for her any other acts necessary in connection with the due administration of her father's estate. This testimony was given by Cobb and by G. C. Dekle and A. M. Deal. The court permitted Cobb to testify that on the occasion of the execution of the contracts the defendant stated to him that she wanted to employ him to represent her, because she did not desire to and would not return to Georgia, "even if her share of the estate was $50,000," and that the defendant related to him her reasons for not desiring to come to Georgia. The court refused to allow Cobb to state the reasons given by the defendant. It appears that plaintiff and defendant were indicted for the murder of Mr. Daughtry. G. C. Dekle and Albert M. Deal, attorneys, were employed by Cobb to represent him in resisting the criminal charge. Dekle was sent by Cobb to Philadelphia to accompany the defendant, Marie Daughtry, to Georgia. Dekle testified that she stated to him that she had not desired to return to Georgia, and gave him her reasons. The judge permitted this witness to go fully into the matter. His testimony was as follows: "Further pertaining to my testimony with reference to Miss Marie employing Mr. Cobb and signing that contract and power of attorney, Miss Marie gave me a reason why she did that, and why she did not want to return to Georgia; she said she did not want to return, because of the circumstances under which she left Screven County. She stated that she left with a colored man by the name of John Lipsey, and lived with him, and went ahead to say that in New York she was forced to marry him, and that a lot of people knew about her going away with him, and that she would not ever come back if her share in the estate had been fifty thousand dollars.

I saw that [her] daughter, Helen. She is a person of color. Her daughter's husband is a mulatto." A. M. Deal testified that the defendant told him "that she employed Mr. Cobb, and gave him the power of attorney and this contract for the reason that she did not want to come back to Georgia at all."

In an amendment the plaintiff pleaded, in substance, that one of the considerations moving to the defendant in the execution of the contracts, was his "promise and agreement . . to keep inviolate all matters and things connected with her private life, which she committed to him as her reasons for remaining away from Georgia." This promise of secrecy covered, according to his pleading, "her place of residence and with whom she lived and had theretofore lived for a period of approximately seventeen years." Thus the plaintiff alleged that the defendant exacted from him as one of the considerations moving to her in the execution of the contracts, a promise not to disclose certain of her private affairs which she had committed to him. In the evidence objected to, however, there is no mention of any promise of secrecy, but it is merely stated that by reason of the existence of these private affairs the defendant did not desire to return to Georgia, and that this was the "moving consideration" to her in the execution of the contracts. It was not testified that this was made a part of the agreement. The pleadings actually refer to a consideration of the contract, while the evidence gives her motive in executing them. In objecting to the testimony of Cobb, counsel for the defendant called the attention of the court to the fact that by an amendment the plaintiff alleged "that a consideration of the contract of employment was that an attorney was to keep secret information that he obtained from his client," and urged that since, "as a matter of law and as a matter of ethics of the profession, he [Cobb] was bound to keep it a secret anyhow," the promise to do so did not constitute a good consideration, and that the court should not permit Cobb to divulge any of these matters which were committed to him by the defendant, since it is provided in the Code, § 38-1605, that "No attorney shall be competent or compellable to testify, for or against his client, to any matter or thing, knowledge of which he may have acquired from his client, by virtue of his relations as attorney, or by reason of the anticipated employment of him as attorney." Concerning the testimony of Mr. Dekle and Mr. Deal it

was urged that they were attorneys and agents of Cobb, who was attorney for the defendant, and that communications made by her to them should, in principle, fall under the prohibition of the Code section.

Under the Code rule, which is declaratory of the rule that existed at common law (*Stone* v. *Minter,* 111 *Ga.* 45, 49, 36 S. E. 321, 50 L. R. A. 356), an attorney is not competent to testify concerning matters committed to him by his client. Accordingly, since a promise to do that which the law compels one to do is not a good consideration for a contract (*Johnson* v. *Hinson,* 188 *Ga.* 639, 4 S. E. 2d, 561), and cit., a promise of an attorney to keep confidential matters committed to him by his client is not a good and valid consideration to support a contract between them. However, as we have attempted to point out, the evidence did not in fact as did the pleadings, relate to an actual consideration of the contract, but had reference to the motive of the defendant in executing the contracts. There is a material difference between the two. A may enter into a contract for the purchase of goods with B, for the reason that he thinks that thereby he will gain B's good will, and that B will some time in the future reciprocate the business. That A seeks to gain the good will of B, so that B will reciprocate the business, constitutes his motive in the execution of the contract of purchase, but does not relate to the consideration of the contract. On the other hand, A may exact from B, as a consideration for the contract of purchase, a promise that he will in the future reciprocate the business. Here the promise of B becomes a part of the consideration of the contract of purchase flowing to A. It follows that in so far as the objection to the testimony was that a promise on the part of an attorney to keep inviolate confidential communications with his client could not constitute a valid consideration for a contract, it was foreign thereto and without merit.

The present case constituted a controversy between an attorney and a client. The controversy related directly to the contract of employment. The defendant resisted the plaintiff's claim for damages on account of her alleged breach of the contract, on the ground that it was obtained by fraud. She testified that plaintiff represented to her that her father left a will in which she was left $1.00; that he was in a position to destroy the will; and that it

118

would be necessary for her to have a lawyer to obtain her share in the estate, because the family was unwilling for her to have any part of the estate, and there would be litigation and much expense. She further testified that all of these representations were false, in that her father left no will, and there was no necessity for her to have a lawyer to represent her in connection with her share of the estate; and that these false representations of the plaintiff induced her to execute the contract and power. This was a serious charge against the plaintiff, and if true would render the contract void. Subject to the usual requirement of materiality, it seems clear that in such case the attorney should be allowed to testify as to matters which might otherwise be confidential under the provisions of the Code. The defendant bared her theory of the transaction between them, and she is in no position to assert that the plaintiff should not be allowed to relate his. "Whenever the disclosure of a communication, otherwise privileged, becomes necessary to the protection of the attorney's own rights, he is released from those obligations of secrecy which the law places upon him. . . Thus the rule as to privilege has no application where the client, in an action against the attorney, charges negligence or malpractice, or fraud, or other professional misconduct. In such cases it would be a manifest injustice to allow the client to take advantage of the rule of privilege to the prejudice of his attorney. 1 Thornton on Attorneys at Law, § 127, and cit. See Dewberry v. Bank of Standing Rock, 227 Ala. 484 (150 So. 463); Jackson v. Swift & Co. (La. App.), 151 So. 816; Tiger v. Lozier, 124 Okla. 260 (256 Pac. 727); Boring v. Harber, 130 Okla. 251 (267 Pac. 252); cf. Phillips v. Powell, 210 Cal. 39 (290 Pac. 441). This applies with equal force to the testimony of the other witnesses in behalf of the plaintiff. The testimony was not immaterial and irrelevant. It tended to rebut the defendant's claim that the plaintiff fraudulently induced her to enter into the contract. It also tended to rebut the defendant's testimony that the reason she was reluctant to come to Georgia, even before her indictment for the murder of her father, was that plaintiff had led her to believe that she would be arrested if she did so. It was material for still another reason, as will appear from the next division of the opinion.

■ In the contract it was provided that "In consideration of the undertakings of the party of the second part . . party of

the first part agrees to allow as compensation to party of the second part one half of any and all sums of money or property of any and every kind or description which party of first part shall or may recover or have allowed and paid to her and her interest or share in and to said estate." It is insisted on behalf of the defendant that under this provision Cobb was entitled to compensation only in the event there was a recovery by him of the defendant's share of the estate; and that since it affirmatively appeared that there was no necessity for a suit to obtain her share of the estate, he could not recover thereunder. We can not agree to this construction of the provision. The cardinal rule in the construction of contracts "is to ascertain the intention of the parties." Code, § 20-702. While counsel for defendant in his brief repeatedly refers to the contract as providing compensation to the plaintiff in one half of the sum which the *plaintiff* "shall or may recover or have allowed and paid to her," it must be noted that the contract actually provides for payment of one half the sum which the *defendant* shall recover, etc. The word "recover" generally denotes, as contended by counsel for the defendant, the restoration of a right by a solemn judgment of a court of justice (Hoover *v.* Clark, 7 N. C. 169),—the collection of a debt by process and course of law. People ex rel. Atty-gen. *v.* Reis, 76 Cal. 269 (18 Pac. 309). But to consider only the word "recover" is to consider only a part of the provision. The contract provides that plaintiff is to be paid one half of the amount the defendant "shall or may recover *or have allowed and paid to her."* It does not appear that the words "recover," and "allowed and paid," are used as synonymous. It is true that the word "allowed" carries the meaning of the grant of a right by a tribunal having jurisdiction of the matter, and that it may be construed to mean the grant of defendant's right to a share of the estate by a court pursuant to a claim made therefor. It does not necessarily mean this, but may refer to the amount allowed and paid the defendant by the administrator as her share of the estate. When the provision is considered in connection with the power of attorney executed simultaneously therewith, wherein no specific mention is made of the institution and prosecution of a suit by the plaintiff, and the testimony of the plaintiff concerning the motive of the defendant in making the contracts, and his further testimony that he advised her that there was no will and that she

was in fact entitled to a share in the estate, it can not be said, as a matter of law, that the parties by the above provision contemplated solely the recovery of defendant's share in the estate by a suit therefor, as a condition precedent to any right in him to compensation.

■ We do not deem it necessary to elaborate on headnote 3.

*Judgment affirmed. All the Justices concur.*