### S00A0383. WALDRIP v. HEAD.
(532 SE2d 380)

FLETCHER, Presiding Justice.

A jury convicted Tommy Lee Waldrip of murder, and he was sentenced to death.[1] After Waldrip filed a habeas petition alleging ineffective assistance of counsel, the warden sought the files of Waldrip's trial and appellate counsel. The habeas court granted the warden's motion to compel access to the complete files of Waldrip's trial and appellate counsel. We granted this application to determine the extent of the waiver of the attorney-client privilege when a habeas petitioner asserts a claim for ineffective assistance of trial counsel.

---

[1] *Waldrip v. State,* 267 Ga. 739 (482 SE2d 299) (1997).

Following the rule adopted in other states, we hold that the filing of an ineffective assistance claim is an implied waiver of the attorney-client privilege limited to the documents that are relevant to the petitioner's claim. Because of the potential problems that would be created by public disclosure of the documents, we further conclude that Waldrip is entitled to a protective order prohibiting disclosure of the files obtained in this habeas proceeding to persons other than those needed to assist the warden in rebutting the claim of ineffectiveness. Therefore, we reverse.

## FACTS

Bypassing the requirements of the Georgia Civil Practice Act,[2] the state filed its motion to compel in July 1999. Three days later, the habeas court entered an order compelling Waldrip's former counsel to produce their entire files. When Waldrip requested an opportunity to respond, the habeas court vacated its order and gave Waldrip ten days to respond. In his response, Waldrip opposed the motion and sought a protective order restricting disclosure to the habeas proceeding and the state attorney general's office. In September 1999, the warden wrote a letter brief asking the habeas court to rule on his motion to compel and attaching a proposed order. Two days later, the habeas court entered the order. It reinstated the July order and further required Waldrip's previous counsel to produce their complete files to the warden. In October, the habeas court issued an order clarifying that habeas counsel did not have to produce any of their files or work product and denying the motion for a protective order on the grounds that the issue was not ripe for review. Although Waldrip requested a certificate of immediate review, the trial court did not rule on the motion.

Waldrip filed both an application for interlocutory appeal and a direct appeal from the clarification order, and the warden filed motions to dismiss. This Court granted the application, consolidated it with the direct appeal, and asked the parties to address three questions:

1. Is an order in a habeas proceeding directing petitioner's trial and appellate counsel to produce all their files directly appealable as a collateral order?

2. What is the scope of the waiver of the attorney-client privilege when a habeas petitioner asserts a claim for ineffectiveness of counsel?

---

[2] See OCGA § 9-11-37 (1993).

3. When former counsel's files or a portion thereof are required to be produced in a habeas proceeding, do the files retain any measure of confidentiality or privilege?

## JURISDICTION

1. As the state's highest appellate court, this Court reviews the decisions of other courts in the state in four ways: (1) by direct appeal;[3] (2) by discretionary or interlocutory application;[4] (3) by writ of certiorari;[5] and (4) by certified question.[6] We review state trial court decisions by direct appeal or application, decisions of the Court of Appeals of the State of Georgia by petition for certiorari or by certified question, and federal court decisions by certified question from the federal appellate courts.[7]

Generally, the Georgia Code limits the right of direct appeal to final judgments or rulings that have a final or irreparable effect on the rights of parties.[8] This Court has created an exception for "collateral orders" when the issue is substantially separate from the basic issues in the complaint, an important right may be lost if review must wait until a case is finally resolved, and nothing further in the underlying action can affect the issue on appeal.[9]

Although Waldrip argues that he has a right to directly appeal the October clarification order, we conclude that it does not meet the collateral order exception to the final judgment rule. The issue of whether Waldrip waived his attorney-client privilege is not a separate issue from his claim in his habeas petition that his trial and appellate counsel were ineffective; instead, the privilege and claim are directly related. Therefore, we decline to extend the collateral order doctrine to the discovery order in this case and dismiss the direct appeal.[10]

In addition to filing a direct appeal, Waldrip filed an application for an interlocutory appeal. Since discovery orders generally are

---

[3] See OCGA § 5-6-34 (a) (1995).

[4] See OCGA §§ 5-6-35; 5-6-34 (b) (1995).

[5] See Ga. Const. art. 6, sec. 6, para. 5 (1998); OCGA § 5-6-15 (1995); Ga. Sup. Ct. R. 38-45.

[6] See Ga. Const. art. 6, sec. 6, para. 3 (7) (1998); art. 6, sec. 6, para. 4.

[7] See Ga. Const. art. 6, sec. 6, para. 4 (1998); OCGA § 15-2-9 (1999).

[8] See *In re Paul*, 270 Ga. 680, 682 (513 SE2d 219) (1999); OCGA § 5-6-34 (a) (2)-(8) (1995).

[9] See *Scroggins v. Edmondson*, 250 Ga. 430, 431-432 (297 SE2d 469) (1982); *Patterson v. State*, 248 Ga. 875, 876-877 (287 SE2d 7) (1982).

[10] See *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77, 80-82 (485 SE2d 525) (1997); see also *Turner v. Giles*, 264 Ga. 812, 813 (450 SE2d 421) (1994) (dismissing direct appeal after declining to adopt federal rule permitting a direct appeal from an interlocutory order denying a claim of qualified immunity in a § 1983 action and dismissing direct appeal).

interlocutory, our appellate courts ordinarily obtain jurisdiction over them through the application process. This process requires the trial court to certify that its order is "of such importance to the case that immediate review should be had."[11] The purpose of the certificate requirement is to permit trial courts, rather than parties, to regulate the litigation;[12] it is not to permit trial courts to deprive appellate courts of their jurisdiction. Under our present rules, strict adherence to the certificate requirement provides no alternative procedure in the event that the appellate court disagrees with the trial court's decision that "immediate review should be had."

Because of this defect in the interlocutory review process, this Court on rare occasions has assumed jurisdiction to consider an appeal despite the absence of a final judgment or a certificate of immediate review from the trial court. We have chosen to bypass the statutory requirements for interlocutory review and address the substantive issues raised on appeal when the case presented an important issue of first impression concerning a recently enacted statute for which a precedent was desirable,[13] dismissal would deny the litigant the right of appellate review in this state,[14] or consideration of the trial court order as "final" served the interest of judicial economy.[15] In effect, this Court has granted the application for interlocutory review in those exceptional cases that involve an issue of great concern, gravity, and importance to the public and no timely opportunity for appellate review.

Despite the dissent's assertion that this Court is overstepping its authority by ignoring the certificate requirement, both the state constitution and code give this Court authority to establish rules of appellate procedure for this state. The constitution states that each court may exercise the powers "necessary in aid of its jurisdiction" and gives the Supreme Court express responsibility for administering the entire judicial system.[16] The code gives this Court authority

---

[11] See OCGA § 5-6-34 (b) (1995).

[12] See *Scruggs v. Georgia Dep't of Human Resources,* 261 Ga. 587 (408 SE2d 103) (1991).

[13] See *In re Board of Twiggs County Comm'rs,* 249 Ga. 642, 643 (292 SE2d 673) (1982) ("we have chosen to pretermit the procedural issue and decide the appeal on its merits . . . because an important first-impression issue has been raised under this recently enacted and previously unconstrued public revenue statute").

[14] See *G. W. v. State,* 233 Ga. 274 (210 SE2d 805) (1974) (reversing court of appeals decision dismissing appeal in which nonresident juveniles challenged adjudicatory order transferring them to juvenile court authorities of another state); cf. *Scroggins,* 250 Ga. at 432 (orders granting motions to cancel lis pendens are directly appealable under collateral order exception because "an important right might be lost if review had to await final judgment").

[15] See *Isaacs v. State,* 257 Ga. 798 (364 SE2d 567) (1988) (considering appeal of interlocutory order denying plea in abatement and motion for acquittal in death penalty case, even though trial court did not grant certificate of immediate review, based on judicial economy).

[16] See Ga. Const. art. 6, sec. 1, para. 4; art. 6, sec. 9, para. 1.

to "establish, amend, and alter its own rules of practice."[17] Even if the legislature had not expressly provided this authority, this Court has the inherent power to maintain a court system that provides for the administration of justice in an orderly and efficient manner.[18] As another court has explained, "A court uses its inherent power when constitutional provisions, statutes, or court rules fail to supply answers to problems or when courts find themselves compelled to provide solutions that enable the litigative process to proceed smoothly."[19]

Just as this Court granted parties the right of direct appeal of collateral orders, although there was no legislative grant of authority for that action, this Court has the power to consider appeals of interlocutory orders when we disagree with the trial court concerning the need for immediate appellate review of an interlocutory order. Although we could enact the rule through our formal rule-making process, we choose to adopt this rule of procedure through an opinion, as we did in adopting the collateral order doctrine, to explain both the rule and its rationale.[20]

Our adoption of this rule is consistent with national standards developed by the American Bar Association's Judicial Administration Division. The Standards Relating to Appellate Courts recommend that appellate courts retain the discretion of interlocutory review when it would materially advance the end of the litigation, protect a party from irreparable harm, or clarify an issue of public importance.[21] "The most desirable combination is to provide that, in every case where interlocutory review is sought, the lower court should give its opinion whether such review is appropriate, but that its determination should not bind the appellate court."[22]

In this case, Waldrip sought a certificate of immediate review, but the trial court did not grant his request. We disagreed with the trial court's decision and granted the interlocutory application because it presents the important issue of the scope of the waiver of the attorney-client privilege when a habeas petitioner files a claim of ineffective assistance of counsel. In addition, every habeas court

---

[17] See OCGA § 15-2-8 (1999).

[18] *Garcia v. Miller*, 261 Ga. 531, 532 (408 SE2d 97) (1991); see also *McCorkle v. Judges of Superior Court*, 260 Ga. 315, 317 n.1 (392 SE2d 707) (1990) (Hunt, J., concurring) (court exercises its inherent power only when established methods fail); *Kirwan v. Welch*, 549 NE2d 348 (Ill. 1989) (recognizing the legislature's concurrent jurisdiction to promulgate rules of procedure if they do not infringe on the courts' inherent powers).

[19] *State v. Buckner*, 527 SE2d 307 (N.C. 2000).

[20] See *McCowan v. Brooks*, 113 Ga. 384 (39 SE 112) (1901) ("the court may, without a formal amendment of the rule, pass an order which will accomplish the same purpose in the particular case as was intended to be accomplished by the rule adopted").

[21] See Standards Relating to App. Cts. § 3.12 (1994).

[22] See id. at 34 commentary.

addressing the waiver issue has refused to issue a certificate of immediate review,[23] thus precluding appellate review of the substantive issues that Waldrip has raised. Moreover, once the entire files of trial and appellate counsel are released, the habeas petitioner has no meaningful way to protect privileged matter that is unrelated to the specific claim of ineffectiveness or to restrict its use. Given the importance of the waiver issue, the frequency with which it is being litigated in habeas proceedings, the breadth of the orders being entered, and the trial courts' unwillingness to certify the issue for review, the establishment of a precedent appears desirable.[24] Thus, this application is one of those rare cases in which we exercise our discretion to review an interlocutory order without a trial court certificate because the appeal presents a legal issue of great concern and importance and rights may be lost if review is delayed until a final judgment is entered.

## SCOPE OF WAIVER OF ATTORNEY-CLIENT PRIVILEGE

2. Communications between attorney and client are excluded from evidence in this state on grounds of public policy.[25] The privilege belongs to the client and may be waived.[26] For example, we have held that an attorney is released from the obligations of secrecy when a client charges negligence, malpractice, or other professional misconduct in an action against the attorney[27] or a habeas petitioner claims that he or she was not informed about the consequences of a guilty plea.[28] As a result, an attorney who defends a suspect against criminal charges at trial may testify in a habeas corpus action concerning matters growing out of the attorney-client relationship.[29]

---

[23] See *McMichen v. Turpin*, S99A0057 (Ga. Sup. Ct. Oct. 21, 1998); *Wellons v. Turpin*, S98A0320 (Ga. Sup. Ct. Dec. 1, 1997).

[24] See *McClain v. Turpin*, 97-V-743 (Butts Co. Super. Ct. June 3, 1999) (motion to compel access to trial counsel's files granted after trial and habeas counsel did not oppose motion); *Alderman v. Turpin*, 94-V-720 (Butts Co. Super. Ct. April 23, 1999) (petitioner must produce complete trial attorney's file in re-sentencing trial and appeal); *Burgess v. Turpin*, 95-V-656 (Butts Co. Super. Ct. March 30, 1999) (petitioner must provide access to entire files of former defense counsel); *Greene v. Turpin*, 98-V-320 (Butts Co. Super. Ct. Oct. 6, 1998) (petitioner must provide access to complete files of former trial counsel); *McMichen v. Turpin*, 97-V-005 (Butts Co. Super. Ct. Aug. 17, 1998) (warden is entitled to complete files of petitioner's former trial and appellate counsel); *Wellons v. Turpin*, 97-V-339 (Butts Co. Super. Ct. Sept. 30, 1997) (petitioner must produce complete trial attorney's file with one exception related to voir dire material); *Davis v. Turpin*, 94-V-162 (Butts Co. Super. Ct. Jan. 9, 1997) (since waiver covers the entire period of representation by all of petitioner's former attorneys, all areas of trial and appellate attorneys' files shall be open for inspection).

[25] OCGA §§ 24-9-21 (2); 24-9-24; 24-9-25 (1995).

[26] See Alexander Scherr, *Green Georgia Law of Evidence* §§ 194-195 (5th ed. 1999).

[27] *Daughtry v. Cobb*, 189 Ga. 113, 118 (5 SE2d 352) (1939).

[28] *Bailey v. Baker*, 232 Ga. 84, 86 (205 SE2d 278) (1974).

[29] *Roberts v. Greenway*, 233 Ga. 473, 477 (211 SE2d 764) (1975) (attorney may testify

Although these previous cases involved only the testimony of trial counsel, we conclude that any waiver of the attorney-client privilege is not limited solely to the attorney's testimony, but extends also to documents in trial counsel's files. The purpose of the habeas corpus hearing is to determine the truth of the allegations that constitutional rights were violated. "A petitioner for habeas corpus relief cannot allege that he was deprived of his constitutional rights and then invoke the shield of the attorney-client privilege to prevent an accurate determination of the merit of his claim."[30] Given the passage of time and the difficulty that counsel may have in remembering the reasons for a particular strategy at trial or on appeal, the state should have the right to review the attorney's files to refresh counsel's memory concerning disputed matters.[31]

Although we have never expressly addressed the scope of the waiver of the attorney-client privilege when a habeas petitioner asserts an ineffective assistance of counsel claim, we have previously limited any implied waiver of the attorney-client privilege. In *Felts v. State*,[32] the defendant argued that his attorney-client privilege was violated when the state impeached him concerning his testimony at a previous trial that he had lied to his attorney. We held that Felts had waived his privilege concerning his lie that someone gave him the murder weapon at the scene of the shooting by testifying without objection about the matter at his earlier trial, but limited the waiver to that statement. Similarly, when a habeas petitioner claimed that she was not informed of the consequences of her guilty plea, her attorney was permitted to testify concerning the information he gave her regarding the plea.[33] The rationale for these decisions is that the client waives the privilege to the extent necessary to allow the attorney to defend his or her own conduct against the charges of misconduct.[34]

Other states addressing the waiver issue provide persuasive authority for a rule limiting waiver of any privilege to communications related to the specific claims on ineffectiveness.[35] When faced

---

when habeas petitioner challenges validity of guilty plea); *Peppers v. Balkcom*, 218 Ga. 749, 751 (130 SE2d 709) (1963) (counsel had right to defend himself against charges of professional misconduct and negligence in handling defense).

[30] *Roberts*, 233 Ga. at 477.

[31] See *Reed v. State*, 640 So2d 1094, 1097 (Fla. 1994). But see *Waitkus v. Mauet*, 757 P2d 615, 616 (Ariz. App. 1988) (waiver of attorney-client privilege permits questioning of attorney at evidentiary hearing but not access to the attorney's work product and trial preparation files).

[32] 244 Ga. 503, 505 (260 SE2d 887) (1979).

[33] See *Bailey*, 232 Ga. at 86.

[34] See Paul S. Milich, *Georgia Rules of Evidence* § 21.16 (1995); *Hyde v. State*, 70 Ga. App. 823, 827 (29 SE2d 820) (1944).

[35] See *State v. Walen*, 563 NW2d 742, 753 (Minn. 1997) (waiver reaches only communi-

with the same issue, the North Carolina Supreme Court held that the defendant waived the benefits of both the attorney-client privilege and work product doctrine on matters relevant to the allegations of ineffective assistance of counsel. Despite the defendant's broad-ranging attack on counsel's representation at trial, that court concluded that the trial court exceeded its authority in directing the defendant to provide the state access to all files related to the case.[36]

Based on this persuasive authority, our prior decisions, and the reason for finding an implied waiver, we reject the state's contention that the filing of an ineffectiveness claim is an absolute waiver that entitles it to the complete file of former trial and appellate counsel. Instead, we hold that a habeas petitioner who asserts a claim of ineffective assistance of counsel makes a limited waiver of the attorney-client privilege and work product doctrine and the state is entitled only to counsel's documents and files relevant to the specific allegations of ineffectiveness.

To implement this holding, we suggest that parties follow the procedure used in resolving similar discovery disputes in both civil and criminal cases. Initially, petitioner's current counsel determines the documents waived by the privilege. When the state disagrees, the parties should attempt to resolve their dispute; if they are unable to reach an agreement, the state may move for an in-camera inspection of the disputed parts of the files. At that point, the habeas court needs to review the files and order the disclosure of the parts that are relevant to the issues raised.[37]

### PROTECTING THE CONFIDENTIALITY OF TRIAL COUNSEL'S FILES

3. The Civil Practice Act provides that a court, for good cause shown, "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden."[38] The order may deny discovery, limit its scope to certain

---

cations relevant to the issue of ineffective assistance of counsel); *State v. Taylor*, 393 SE2d 801, 805 (N.C. 1990) (waiver limited to matters relevant to allegations of ineffective assistance of counsel); *In re Dean*, 711 A2d 257, 258 (N.H. 1998) (ineffective assistance of counsel claims constitute a waiver to the extent relevant to the claim).

[36] See *Taylor*, 393 SE2d at 805.

[37] See *McKinnon v. Smock*, 264 Ga. 375, 378 (445 SE2d 526) (1994) (providing for in-camera review when dispute arises concerning whether document contains protected work product material); *Hall v. Madison*, 263 Ga. 73, 74 (428 SE2d 345) (1993) (trial court in habeas proceeding may examine prosecutor's voir dire notes in camera to determine whether disclosure is warranted); *Tribble v. State*, 248 Ga. 274, 275-276 (280 SE2d 352) (1981) (providing for in-camera inspection of state's file for exculpatory material based on request by defense).

[38] See OCGA § 9-11-26 (c) (1993).

matters, or specify the terms and conditions under which it may be had.

Waldrip seeks a protective order restricting disclosure of documents to the habeas proceeding and the attorney general's office, which represents the warden. In particular, he requests that the documents or their contents not be disclosed to law enforcement officers or prosecutors because it would chill his constitutional rights under the fifth and sixth amendments and make a fair retrial impossible. As support, Waldrip cites *Commonwealth v. Chmiel*.[39] In that case, the Pennsylvania Supreme Court reversed a murder conviction and death sentence because the trial court permitted the state to introduce prior counsel's testimony concerning an ineffectiveness claim at the defendant's second trial. The court held that the policies inherent in the attorney-client privilege restricted the use, as well as the scope, of permitted disclosures because of the defendant's right to effective assistance of counsel and right against forced self-incrimination. "Just as an attorney may not respond to allegations of ineffectiveness by disclosing client confidences unrelated to such allegations, so the client confidences properly disclosed by an attorney at an ineffectiveness hearing may not be imported into the client's subsequent trial on criminal charges."[40]

Because Waldrip's petition has not been resolved and there is no pending trial, we do not need to address the issue raised in the Pennsylvania case concerning the use of an attorney's testimony at a client's subsequent trial. Rather, our inquiry is limited to the use of former counsel's files in this habeas proceeding. Having seen the potential problems that can be created by public disclosure and use of counsel's files, we conclude that the files retain their confidential nature despite the client's implied waiver of the attorney-client privilege in this habeas corpus proceeding. To protect the petitioner's constitutional right to effective assistance of counsel and against compelled self-incrimination, we hold that Waldrip is entitled to a protective order limiting disclosure in this habeas proceeding to persons needed to assist the warden in rebutting the claim of ineffectiveness.

*Judgment reversed. All the Justices concur, except Carley, Thompson and Hines, JJ., who dissent.*

CARLEY, Justice, dissenting.

This Court is bound by the applicable constitutional and statutory provisions which were enacted for the purposes of establishing its jurisdiction and limiting its power. Thus, it should not be consid-

---

[39] 738 A2d 406 (Pa. 1999).
[40] Id. at 424.

ered a novel proposition that "[t]he provisions of the law respecting the procedure to be followed in perfecting appeals to this [C]ourt are jurisdictional, and unless this [C]ourt has jurisdiction of a case, it is without power or authority to render a judgment upon review." *Spivey v. Nalley*, 212 Ga. 810 (96 SE2d 260) (1957). Because the exercise of jurisdiction over this case is contrary to that controlling principle and is based upon nothing other than the majority's own subjective determination that it is somehow appropriate for it to rule on the merits, I dissent.

At issue in this currently pending habeas corpus proceeding is a discovery order. In this connection, we must bear in mind that "habeas corpus is not a criminal proceeding, but is considered to be civil in nature. [Cits.]" *Gibson v. Turpin*, 270 Ga. 855, 857 (1) (513 SE2d 186) (1999). The *only* jurisdictional question which the parties were asked to address is whether that non-final ruling is directly appealable as a collateral order. The Court correctly answers that question in the negative. However, the majority then proceeds to hold that the Court nevertheless has jurisdiction over this case because it will deem it to be a valid "interlocutory" appeal, even though there was absolutely no compliance with the requirement of OCGA § 5-6-34 (b) that the trial court certify its discovery order for immediate review.

The majority does not cite either controlling or persuasive authority for its unprecedented holding. I submit that there is no such authority because in this case, the absence of jurisdiction pursuant to OCGA § 5-6-34 is undisputed. Compare *In re Board of Twiggs County Commissioners*, 249 Ga. 642 (1) (292 SE2d 673) (1982). Heretofore, certification by the trial court has *always* been considered a necessary and indispensable prerequisite to appellate jurisdiction over a civil case involving an interlocutory discovery order. See *Johnson & Johnson v. Kaufman*, 226 Ga. App. 77 (485 SE2d 525) (1997). Compare *Isaacs v. State*, 257 Ga. 798 (364 SE2d 567) (1988) (denial of plea in abatement and motion for acquittal in a *criminal* case addressed under the collateral order exception). In *Scruggs v. Ga. Dept. of Human Resources*, 261 Ga. 587, 589 (1) (408 SE2d 103) (1991), we unambiguously held that

> the certificate of immediate review is not "surplusage." [Cit.] The certificate is an essential component of a trial court's power to control litigation. Therefore, a party seeking appellate review from an interlocutory order must follow the interlocutory-application subsection, OCGA § 5-6-34 (b), seek a certificate of immediate review from the trial court, and comply with the time limitations therein.

The majority does not even attempt to distinguish *Scruggs*. Instead, it summarily discounts the established procedure as a "defect in the interlocutory review process" and posits that the exercise of jurisdiction in this case is consistent with certain American Bar Association Standards. In my opinion, a duly enacted statute of our General Assembly does not constitute and cannot be considered to be a "defect" which this Court or any court is at liberty to ignore because it prefers the pronouncements from a source which it perceives to be more enlightened. Instead, I strongly believe that the judiciary must comply with those legislative enactments, rather than embrace the recommendations made by some non-binding extraneous entity. Our General Assembly, not the American Bar Association, determines the manner in which an order entered in a Georgia trial court is appealable. "[T]he right of appeal is not absolute, but is one based upon the conditions imposed by the General Assembly for bringing cases to the appellate courts." *Fife v. Johnston*, 225 Ga. 447 (169 SE2d 167) (1969). The legislative branch of government in any jurisdiction may or may not consider and adopt the American Bar Association Standards cited by the majority. However, unless and until the Georgia General Assembly enacts those recommendations as the law of this state, they are completely irrelevant to a determination of this Court's authority to hear a particular case.

The majority predicates its exercise of jurisdiction upon the concept of inherent power. However, " '[t]he very conception of inherent power carries with it the implication that its use is for occasions not provided for by established methods . . . .' " *McCorkle v. Judges of Superior Court of Chatham County*, 260 Ga. 315, 317, fn. 1 (392 SE2d 707) (1990) (Hunt, J., concurring). Certainly then this is not an appropriate case for the exercise of inherent power, because there *is* an "established method" for appealing the interlocutory discovery order, and there has been no compliance with the prescribed procedure. No court is at liberty "to ignore jurisdictional and procedural statutes and rules, and to change its role from disinterested decision-maker to appellate advocate reviewing a trial record for error." *Rowland v. State*, 264 Ga. 872, 874 (1) (452 SE2d 756) (1995). However, that is exactly what has been done in this case. According to the concept of inherent judicial power adopted today, either this Court or the Court of Appeals is now authorized to ignore clear statutory limits on its jurisdiction in any case simply because a majority of its members has a subjective disagreement with the propriety of those limitations as applied to that case. In my opinion, this constitutes blatant judicial usurpation of the legislative function, and cannot be considered to be the legitimate exercise of inherent judicial authority. "The Legislature, being the sovereign power in the State, while acting within the pale of its constitutional competency, it is the province of the

Courts to interpret its mandates, and their duty to obey them, however absurd and unreasonable they may appear." *Flint River Steamboat Co. v. Foster*, 5 Ga. 194 (2) (1848).

Although the General Assembly has determined that the trial courts of this state are to play an important, integral and indispensable function in the appeal of any *interlocutory* order, it is now apparent that a majority of this Court, by employing the pretext of exercising its inherent power, will ignore the legislative mandate and henceforth will dispense with the lower court's input in any and every case which, in its unbridled discretion, it wishes to review. I dissent because I have consistently subscribed to the principle that the judiciary should lead by example and, thus, that this Court must faithfully adhere to the constitutional and statutory provisions which apply to it to the same extent that it ensures the just enforcement of such of those provisions that are applicable to others. Because we have no jurisdiction over this case, this Court cannot, the majority should not and I will not reach the merits.

I am authorized to state that Justice Thompson and Justice Hines join in this dissent.

DECIDED JUNE 12, 2000 —
RECONSIDERATION DENIED JULY 7, 2000.

*Drinker, Biddle & Reath, Lawrence J. Fox, David J. Kessler*, for appellant.

*Thurbert E. Baker, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Patricia B. Burton, Assistant Attorney General*, for appellee.

*Timothy P. Terrell, Jack L. Sammons, Jr., L. Ray Patterson, Roy M. Sobelson*, amici curiae.