308 Ga. 74
FINAL COPY

S18G1436.  HILL, KERTSCHER & WHARTON, LLP et al. v.
MOODY et al.

BOGGS, Justice.

Under longstanding Georgia law, when a client sues his former attorney for legal malpractice, the client impliedly waives the attorney-client privilege with respect to the underlying matter or matters to the extent necessary for the attorney to defend against the legal malpractice claim. The issue presented in this appeal is whether the implied waiver extends to the client's communications with *other* attorneys who represented the client with respect to the *same* underlying matter, but whom the client chose not to sue. The trial court held that the waiver does extend to such other counsel and therefore denied a motion for a protective order in this legal malpractice case. The Court of Appeals reversed, see *Moody v. Hill, Kertscher & Wharton, LLP*, 346 Ga. App. 129 (813 SE2d 790) (2018), and we granted certiorari to decide this issue of first impression. We

hold that when a client sues his former attorney for legal malpractice, the implied waiver of the attorney-client privilege extends to the client's communications with other attorneys who represented the client with respect to the same underlying transaction or litigation. For the reasons described below, we reverse in part and vacate in part the Court of Appeals' judgment, and we remand the case with direction.

1. (a) This case started with a complaint for legal malpractice and breach of fiduciary duty. The complaint alleged as follows. Daryl Moody and two associated business entities, Mast Nine, Inc., and UAS Investments, LLC ("UAS"), had invested in Leucadia Group, LLC, a California-based aerospace company that was owned by Robert Miller and Sean Frisbee. Moody, Mast Nine, and UAS sought legal advice from Hill, Kertscher & Wharton, LLP, and attorneys Douglas Kertscher and Robert Joseph (collectively, "HKW") about terminating Miller as Leucadia Group's president. On or about January 15, 2015, HKW advised Moody, Mast Nine, and UAS to do the following, all without notice to Miller: appoint Moody to

2

Leucadia Group's board of directors; form a new company named Leucadia Investment Holdings, Inc. ("LIH"); have Leucadia Group issue shares to LIH; and terminate Miller as president of Leucadia Group. Moody, Mast Nine, and UAS followed HKW's advice, and HKW prepared the necessary corporate documents. HKW also recommended filing a lawsuit against Miller and Leucadia Group in Fulton County Superior Court, which HKW then filed on behalf of UAS and Frisbee on January 16, 2015. On February 11, 2015, Miller responded by filing a lawsuit in California against Moody, LIH, Leucadia Group, and Frisbee, whom HKW then represented in the California litigation. Despite Moody's specific requests, HKW failed to assert certain defenses properly, including that the California court lacked personal jurisdiction over Moody. HKW did not disclose or obtain written waivers of any potential or actual conflicts of interest resulting from prior or ongoing representation of Leucadia Group and Miller. Miller filed a motion in the Fulton County lawsuit to disqualify HKW, which was granted, and HKW then withdrew from the California lawsuit. The California court ultimately ruled

that Moody's appointment to Leucadia Group's board of directors, Leucadia Group's issuance of shares to LIH, and Miller's termination as president of Leucadia Group were all void.

(b) On April 28, 2017, Daryl Moody, Mast Nine, UAS, and LIH (collectively, "Plaintiffs") filed a complaint against HKW in Cobb County State Court (the "trial court"). The complaint contained counts for legal malpractice and breach of fiduciary duty based on HKW's legal advice and services in connection with the corporate matter involving Leucadia Group and the Fulton County and California lawsuits. On May 30, 2017, HKW filed an answer and counterclaim for unpaid legal fees. HKW admitted representing Mast Nine in connection with certain corporate actions over the course of 2014; representing LIH after it was formed to receive preferred stock from Leucadia Group; representing UAS in the Fulton County lawsuit and with respect to certain corporate acts; and representing Moody, who was the corporate representative of Mast Nine, UAS, and LIH, in the California lawsuit. HKW denied having previously represented Leucadia Group or Miller but

4

admitted that in September 2015, the Fulton County Superior Court granted Miller's motion to disqualify HKW and that HKW then withdrew from the California lawsuit. HKW asserted numerous defenses, including that non-parties caused some or all of the damages alleged and that Plaintiffs had separate counsel who provided "confirmatory advice." HKW also alleged that Moody directed HKW to "follow the instructions of Holland & Knight LLP over the course of its interaction with Mr. Moody."

(c) On June 6, 2017, HKW served a request for production of documents on non-party Holland & Knight under the Civil Practice Act. See OCGA § 9-11-34 (c) (1) (authorizing requests for production of documents directed to "persons, firms, or corporations who are not parties"). See also OCGA § 9-11-26 (b) (1) (authorizing parties in civil litigation to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party"). HKW requested, among other things: (1) Holland & Knight's file for any

corporate work performed for Plaintiffs regarding Leucadia Group, Miller, another named individual, and another named company; (2) Holland & Knight's litigation file for the Fulton County lawsuit; (3) Holland & Knight's litigation file for the California lawsuit; and (4) all correspondence related to that corporate work and the Fulton County and California lawsuits, including communications between Plaintiffs and Holland & Knight. On July 31, 2017, Holland & Knight responded to HKW's discovery request, producing numerous redacted documents and withholding others based on specified objections, including attorney-client privilege and work product protection; Holland & Knight did not object that any of the materials sought were not "relevant to the subject matter involved in the pending action." OCGA § 9-11-26 (b) (1).

Also on July 31, 2017, Plaintiffs filed a motion for a protective order on the same grounds raised by Holland & Knight. On September 12, 2017, HKW filed a response to Plaintiffs' motion with multiple exhibits, including an affidavit by Kertscher concerning Holland & Knight's involvement in HKW's corporate work for

6

Plaintiffs related to Leucadia Group and Holland & Knight's involvement in the Fulton County and California lawsuits. In its response, HKW argued that Plaintiffs' filing of a complaint for legal malpractice against HKW based on HKW's legal advice and services in those three matters constituted an implied waiver of the attorney-client privilege and work product protection with respect to all counsel, including Holland & Knight, that assisted Plaintiffs in those same matters.

No hearing was requested, and on September 19, 2017, the trial court denied Plaintiffs' motion for a protective order. The trial court found that it was undisputed that Holland & Knight together with HKW represented Moody in connection with the matters that are the subject of the legal malpractice complaint and held that Plaintiffs therefore had "waived the attorney-client privilege and work product protection concerning Holland & Knight . . . by asserting the present legal malpractice claims." In support of its ruling, the trial court cited *Christenbury v. Locke Lord Bissell & Liddell, LLP*, 285 FRD 675 (N.D. Ga. 2012). The trial court then

7

granted Plaintiffs' request for a certificate of immediate review; the Court of Appeals granted Plaintiffs' application for interlocutory appeal; and Plaintiffs filed a timely notice of appeal.

(d) The Court of Appeals reversed the trial court's order denying Plaintiffs' motion for a protective order. See *Moody*, 346 Ga. App. at 129. The Court of Appeals recognized that when a client sues his former attorney for legal malpractice, the client impliedly waives the attorney-client privilege to the extent necessary for the attorney to defend against the legal malpractice claim. See id. at 130. However, the Court of Appeals expressed doubt that the implied waiver extends to other attorneys who represented the client in the same underlying matter, stating that this Court has "indicated" that implied waivers of the attorney-client privilege should be narrowly drawn, citing *Waldrip v. Head*, 272 Ga. 572, 578-579 (532 SE2d 380) (2000) (holding that habeas petitioner who asserts claim of ineffective assistance of counsel waives attorney-client privilege and work product protection only to extent necessary for attorney to defend against specific charges of misconduct), overruled on other

8

grounds by *Duke v. State*, 306 Ga. 171 (829 SE2d 348) (2019). See *Moody*, 346 Ga. App. at 130. The Court of Appeals then tried to distinguish *Christenbury* on its facts, stating that the plaintiffs in *Christenbury* also had sued one of the non-party attorneys from whom discovery was sought (albeit in a different court) for the same transaction for which the plaintiffs blamed the defendant-attorneys. See *Moody*, 346 Ga. App. at 130-131.

The Court of Appeals acknowledged the trial court's finding that it was undisputed that Holland & Knight and HKW together represented Plaintiffs in connection with the matters underlying Plaintiffs' legal malpractice complaint. The Court of Appeals also recognized that Moody engaged Holland & Knight "to assist with" the Fulton County and California lawsuits. *Moody*, 346 Ga. App. at 129. However, the Court of Appeals pointed to Holland & Knight's engagement letter with Moody and said that Plaintiffs "actually engaged Holland & Knight *after* the legal advice and services provided by [HKW] that constitute the subject of [Plaintiffs']

complaint against [HKW]." Id. at 131 (emphasis in original).[1] The Court of Appeals then surmised that Holland & Knight was "involved in dealing with the consequences of the alleged malfeasance of [HKW]," and concluded that "even if the rule in *Christenbury* were applied, there would be no basis for finding an implied waiver of the attorney/client privilege between [Plaintiffs] and the non-party Holland & Knight." *Moody*, 346 Ga. App. at 131.

2.    As stated above, OCGA § 9-11-26 (b) (1) authorizes parties to civil lawsuits to "obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party."[2]

---

[1] Notably, Holland & Knight's engagement letter referred to the firm's "longstanding client relationship" with Moody.

[2] The term "not privileged" here refers to the concept of "privileges" as that term is used in the law of evidence. See *United States v. Reynolds*, 345 U.S. 1, 6 (73 SCt 528, 97 LE 727) (1953). As we explained in *Bowden v. Med. Center, Inc.*, 297 Ga. 285 (773 SE2d 692) (2015), when the General Assembly comprehensively and exhaustively revised the discovery provisions of the Civil Practice Act in 1972, OCGA § 9-11-26 was virtually identical to the corresponding federal rule then in effect, so "[c]ases and commentary interpreting the language used in the 1970 version of the federal discovery rules are therefore persuasive authority in interpreting Georgia's discovery

10

Holland & Knight did not dispute that the discovery that HKW sought from it is relevant to the subject matter of Plaintiffs' malpractice action against HKW. Holland & Knight also did not assert that it had no responsive documents in any of the four categories specified above, and where Holland & Knight had no responsive documents, it said so directly (for example, "Holland & Knight has no documents which would be responsive to Request No. 9."). Regarding the four categories above, Holland & Knight objected based on the attorney-client privilege, see OCGA § 24-5-501 (a) (2), thereby indicating that Holland & Knight had responsive documents that it would not produce. See *Ford Motor Co. v. Conley*, 294 Ga. 530, 532, 543-545 (757 SE2d 20) (2014) (noting importance of precision in discovery requests and responses).[3]

---

statutes." *Bowden*, 297 Ga. at 291 n.5. The limitation of discovery to matter that is "not privileged" has been part of the Federal Rules of Civil Procedure from the beginning, in 1938, and was carried forward into the 1970 version of the federal discovery rules. See 8 Richard L. Marcus, Federal Practice & Procedure § 2016 (3d ed. updated 2019). Thus, we conclude that the United States Supreme Court's interpretation in *Reynolds* of the term "not privileged" applies to the same term as used in the discovery provisions of the Civil Practice Act.

[3] Holland & Knight agreed to produce what it considered to be non-

The attorney-client privilege is the oldest of the common law privileges for confidential communications. See *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*, 293 Ga. 419, 421 (746 SE2d 98) (2013). The privilege is currently codified at OCGA § 24-5-501 (a) (2), which says: "There are certain admissions and communications excluded from evidence on grounds of public policy, including, but not limited to, . . . [c]ommunications between attorney and client . . . ." The privilege exists

> to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

*St. Simons Waterfront*, 293 Ga. at 422 (citation and punctuation omitted). In Georgia, the privilege is narrowly construed, because its application operates to exclude evidence and thus to impede the search for the truth. See id. There are also certain exceptions to the

privileged documents from its litigation files for the Fulton County and California lawsuits and also said that it would produce "non-privileged documents relating to the only 'corporate work' performed for" UAS and LIH.

privilege in Georgia; for example, there is an exception for "communications in furtherance of a crime, fraud, or other unlawful end." Id. at 427. Moreover,

> the rule as to privilege has no application where the client, in an action against the attorney, charges negligence or malpractice, or fraud, or other professional misconduct. In such cases it would be a manifest injustice to allow the client to take advantage of the rule of privilege to the prejudice of his attorney.

*Daughtry v. Cobb*, 189 Ga. 113, 118 (5 SE2d 352) (1939) (citation and punctuation omitted). See generally Marjorie A. Shields, Construction and Application of Self-Protection or Self-Defense Exception to Attorney-Client Privilege, 71 ALR6th 249 (2012).

A similar rationale requires recognition that the implied waiver of the attorney-client privilege extends to other attorneys who represented the plaintiff-client in the same underlying matter. To succeed on a claim of legal malpractice, the plaintiff-client must prove three elements: "(1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill and diligence, and (3) that such negligence was the proximate cause of

damage to the plaintiff." *Allen v. Lefkoff, Duncan, Grimes & Dermer, P.C.*, 265 Ga. 374, 375 (453 SE2d 719) (1995) (citation and punctuation omitted). Thus, by suing HKW for legal malpractice, Plaintiffs have put at issue questions of proximate causation, reliance, and damages, all of which may have been affected by other attorneys who represented Plaintiffs in the same matters underlying Plaintiffs' malpractice complaint. As the Washington Supreme Court stated in one of the leading cases in this area, plaintiff-clients should not be allowed to file a claim for malpractice against a former attorney "and at the same time conceal from him communications which have a direct bearing on this issue simply because the attorney-client privilege protects them. To do so would in effect enable them to use as a sword the protection which the Legislature awarded them as a shield." *Pappas v. Holloway*, 787 P2d 30, 36 (Wash. 1990). See also *Bailey v. Baker*, 232 Ga. 84, 86 (205 SE2d 278) (1974) (stating in different context that in analyzing implied waiver of attorney-client privilege, this Court asks, "Is it fair and consistent with the assertion of the claim or defense being made

14

to allow the privilege to be invoked?"); *Simmons Foods, Inc. v. Willis*, 191 FRD 625, 636 (D. Kan. 2000) (noting that attorneys from whom discovery was sought in *Pappas* "all had the opportunity to commit or contribute to the legal malpractice alleged"). As recognized in *Christenbury*, "federal law has largely found implied waiver in such situations." 285 FRD at 683.

Plaintiffs bore the burden of showing their entitlement to a protective order. See OCGA § 9-11-26 (c) (authorizing issuance of protective orders "[u]pon motion by a party . . . and for good cause shown"). The trial court found that Holland & Knight and HKW together represented Plaintiffs in the matters that are the subject of the malpractice complaint. The Court of Appeals acknowledged this finding and agreed that Moody engaged Holland & Knight "to assist with" the Fulton County and California lawsuits, *Moody*, 346 Ga. App. at 129, but appears to have disagreed with the trial court's finding that Holland & Knight represented Plaintiffs in connection with the corporate matter involving Leucadia Group. However, the trial court's finding that Holland & Knight represented Plaintiffs in

15

connection with all three matters underlying the malpractice complaint was entitled to substantial deference by the Court of Appeals. See *Ford Motor Co.*, 294 Ga. at 547-549. See also *Ambassador College v. Goetzke*, 244 Ga. 322, 323 (260 SE2d 27) (1979) ("'This court has repeatedly held that it will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion.'" (quoting *Retail Credit Co. v. United Family Life Ins. Co.*, 130 Ga. App. 524, 526 (203 SE2d 760) (1974))). Moreover, the trial court's finding was supported by Holland & Knight's discovery responses, and the Court of Appeals therefore erred in rejecting the trial court's finding. See *Ford Motor Co.*, 294 Ga. at 547 (noting that trial court's factual finding on discovery matter will be upheld on appeal if there is any evidence to support it). Instead, the Court of Appeals should have affirmed the trial court's ruling that Plaintiffs were not entitled to a protective order based on attorney-client privilege.

3. One other matter requires comment. In light of the Court of Appeals' conclusion regarding implied waiver of the attorney-

16

client privilege, the Court of Appeals had no occasion to consider whether the trial court erred in its analysis of the work product exception to document production, which requires the requesting party to show a substantial need for the materials and an inability without undue hardship to obtain the substantial equivalent of the materials by other means. See OCGA § 9-11-26 (b) (3). We note that, even where the necessary showing is made and discovery of such materials is ordered, the trial court still must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," id., including, if necessary, through in camera review, see *St. Simons Waterfront*, 293 Ga. at 429-430 ("Where otherwise discoverable materials contain such 'mental impressions,' the trial court may need to conduct an in camera review to ensure those portions are redacted prior to production."). See also *Pappas*, 787 P2d at 37-39 (separately analyzing whether documents requested were protected by work product doctrine). Accordingly, we reverse the Court of Appeals' judgment with regard to the implied waiver of

the attorney-client privilege, vacate its judgment with regard to the work product doctrine, and remand the case to the Court of Appeals for further proceedings consistent with this opinion.

*Judgment reversed in part and vacated in part, and case remanded with direction. All the Justices concur, except Peterson, J., not participating, and Ellington, J., disqualified.*

DECIDED FEBRUARY 28, 2020.

Certiorari to the Court of Appeals of Georgia — 346 Ga. App. 129.

*Carlock, Copeland & Stair, Johannes S. Kingma, John C. Rogers; Mark A. Rogers*, for appellants.

*Chandler Law, Douglas V. Chandler, Shaun P. Rooney*, for appellees.

*Holland & Knight, Matthew D. Friedlander, Caroline J.*

*Tanner*, amici curiae.