**THIRD DIVISION
BARNES, P. J.,
BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 22, 2014**

# In the Court of Appeals of Georgia

A14A0925. FEIN et al. v. CHENAULT et al.                    BA-046

BARNES, Presiding Judge.

Florida attorney Frederick J. Fein and his client Continental Tire The Americas, LLC (Continental), filed a direct appeal of the trial court's order in this personal injury case finding that Fein violated the Georgia Rules of Professional Conduct but declining to revoke his pro hac vice status. Instead, the court restricted Fein's advocacy by designating local counsel as lead counsel for defendant Continental and directing Fein not to prepare or file pleadings, contact the court or its staff, or present argument or evidence at any future court proceeding. The court noted that Fein would be permitted to attend all future proceedings, confer with his client and local counsel, and sit at counsel table during court. Because this court lacks jurisdiction to consider

this issue on direct appeal while the case remains pending in the trial court, we must dismiss the appeal.

The underlying case arose when Marlos Chenault and his wife filed suit against multiple defendants after Chenault was involved in a car wreck, allegedly caused by a defective tire, that resulted in his paralysis. The Chenaults brought product liability and negligence claims against Continental and General Motors Corporation (GM). GM is not involved in the issue before this court now. Discovery disputes regarding the disclosure of certain rubber compound formulas and other information Continental Tire deemed to be trade secrets led to a telephone conference with the trial court, which resulted in the court ordering Continental on May 23, 2013, to disclose certain information pursuant to a protective order by June 11, 2013.

On May 31, 2013, Continental filed an "Emergency Motion for Reconsideration or, in the Alternative, Request for a Certificate of Immediate Review of the Court's Order of May 23, 2013," arguing that the telephonic hearing was inadequate to provide the trial court with the necessary case law and evidence, that the information was "highly proprietary trade secrets that are not subject to disclosure," that its production would cause irreparable harm, and that Chenault had not shown sufficient need for the information. It argued that "courts across the county

2

have repeatedly found that tire companies' rubber compound formulas . . . are trade secrets whose secrecy and value in being maintained as secrets justify excluding them from the discovery process," even with a protective order. Continental attached an affidavit from its director of product analysis, who averred that the company's rubber compound formulas are so highly protected they "are not disclosed even pursuant to a protective order."

Chenault responded on May 31, 2013, and argued that the information sought was not a trade secret and was crucial to his claim. He further argued that the cases cited by Continental for the proposition that courts have refused to allow discovery of the information sought actually dealt with different information, and that "a number of other courts have in fact ordered both the disclosure of halobutyl content in tires, as well as the full formulas."[1] Chenault attached orders from Missouri, Florida, and New York courts directing Cooper Tire Company to disclose information regarding the content or existence of halobutyl in the inner liner of the subject tires, and an order from a Montana court directing Continental to disclose tire compound formulas.

---

[1]Halogenated butyl (halobutyl) rubber is an expensive synthetic rubber compound used to make a tire's inner liner less permeable to air. Chenault sought to discover the percentage of halobutyl in the inner liner of the tire that blew on his car.

3

The ten-day window for issuing a certificate of immediate review passed without a ruling from the trial court. On June 4, 2013, Continental filed an emergency motion to stay that portion of the trial court's May 23 order directing it to produce certain information by June 11, 2013. Chenault opposed the stay, noting in a brief filed on June 10, 2013, that Continental was citing to a legal standard inapplicable in Georgia, which required movants to show that the disclosure of confidential information was "necessary." Chenault also pointed out that while Fein represented that a court had never required his clients to produce rubber compound information, he was lead counsel in a Florida case and a DeKalb County, Georgia, case, in which the tire manufacturer he represented was ordered to disclose that information.

On June 11, 2013, the trial court denied Continental's motion to stay and for reconsideration, reminding the parties of the existing protective order and giving Continental until June 14, 2013, to produce the documents and information previously ordered. On June 13, 2014, Continental requested a certificate of immediate review of the court's June 11 order, which the court denied later that same day.

On June 14, 2013, Continental filed a notice of appeal from the court's discovery orders of May 23, 2013 and June 11, 2013, and also filed an application for

4

interlocutory appeal with this court. This court dismissed the interlocutory appeal on July 11, 2013, and dismissed the direct appeal on August 20, 2013, finding in both cases that the discovery issue was neither an exceptional one reviewable absent a certificate of immediate review, nor subject to the collateral source exception to the final judgment rule.

Meanwhile, on June 22, 2013, the trial court sua sponte issued a rule nisi, placing the parties "on notice that it is considering revoking the pro hac vice status of Frederick J. Fein, Esq., based upon material false statements made to the Court regarding legal authority and factual matters during his representation[,] which misstatements may be detrimental to the prompt, fair and efficient administration of justice in this case." It ordered Fein and all other counsel for Continental to appear on September 4, 2013, for a hearing on the issue.

On June 26, 2013, Continental moved to vacate the rule nisi, arguing that Fein did not know what false statement the court referred to, that the court appeared to have already determined his culpability, and that the court had entered the order without giving him a chance to refute it. All previous pleadings had been signed only by local counsel, but the motion to vacate was the first one that also included Fein's signature as counsel for Continental. All subsequent pleadings included Fein's

5

signature until the trial court's October 2013 order at issue here. The trial court denied the motion to vacate the rule nisi order on July 26, 2013.

Both parties filed motions on July 29, 2013, with Chenault moving to compel Continental to provide the discovery the trial court had previously ordered it to produce and Continental filing a motion to recuse the trial court. On July 30, 2013, Continental filed a Rule 5.2 certificate of service of discovery of supplemental answers and objections to Chenault's interrogatories and requests for production of documents.

On July 31, 2013, the trial court issued an order denying Continental's motion to recuse, finding the motion timely but lacking a basis as a matter of law. On August 1, 2013, the court ordered Continental to respond to Chenault's motion to compel by August 16, 2013, and the next day Chenault filed a motion seeking sanctions for discovery abuse. On August 6, 2013, Continental requested a certificate of immediate review of the court's order denying its motion to recuse.

On August 8, 2013, the trial issued an amended rule nisi, directing that

defense counsel, including pro hac counsel, should be prepared to address the question of *whether or not* pro hac counsel violated Georgia Rule of Professional Conduct 3.3 during a telephone conference with the Court regarding Plaintiff's Interrogatories and Request for Production

6

of Documents in May of 2013. Specifically, the Court is concerned that pro hac counsel made false statements regarding the law to the tribunal, failed to disclose legal authority contrary to his position which was known to him, and failed to disclose material facts to the tribunal which were in direct contradiction of his statements made on personal knowledge regarding the production of evidence in this case. *If proven*, these misstatements *may be* detrimental to the prompt, fair and efficient administration of justice in this case and *may be* grounds for a revocation of Mr. Fein's pro hac status pursuant to Rule 4.4 (d) (4) and 4.4 (f) (1) (b).

(Emphasis supplied.)

On August 14, 2013, Fein filed a renewed Motion to Vacate Rule Nisi of June 22, 2013 (the first rule nisi), arguing that, although the trial court added qualifying language in its amended rule nisi, it had not vacated its initial rule nisi, which had already been cited by opposing counsel in other cases as proof that Fein had been found to have exhibited a "pattern of deception" in representing his client. Fein also objected to and moved "to clarify" the amended rule nisi, contending that he still did not know what he failed to disclose or misrepresented to the court.

Two days later, Continental filed an opposition to Chenault's motion to compel and for attorney fees, arguing that it had "bent over backwards to produce hordes of information about the tire" at issue in this case. Continental included affidavits from

7

company engineers stating that Chenault's discovery requests were too broad to comply with and that because this particular unique tire had been developed with GM for this particular vehicle, information about other tires was irrelevant.

Continental also responded to Chenault's motion for sanctions on August 14, 2013. Its brief began, "According to Plaintiffs, no good deed should go unpunished," and asserted that the company had gone above and beyond its required duty to locate certain information, the late production of which had resulted in Chenault's motion for sanctions. Continental accused Chenault of trying to turn the case into one about a "discovery tort," rather than a " 7[-]year-old, used, worn-out tire, which never should have been in service on the day of this accident. . . ." Attached to the motion were affidavits from Fein's local counsel attesting to the parties' agreement about Continental's deadline in supplementing its discovery responses and from Continental's senior counsel regarding the company's efforts to locate the information sought.

An attorney made an entry of appearance on Fein's behalf, and on August 28, 2013, Fein filed a supplement to his objection to the trial court's amended rule nisi and another motion to clarify it, noting that in a discussion with the court's staff attorney, Fein's counsel had been referred to a specific page in one of Chenault's

8

pleadings. In that pleading, Chenault argued that Fein said he had *never been required* to produce rubber compound information and submitted orders from other courts. Fein argued in his supplemental objection that what he actually said during the telephone conference was that "he *has never produced such information* in any case he has handled, a statement which remains true to this day," because the orders directing Continental to produce that information were later vacated. Therefore, Continental did not produce the information, he concluded, and his statement to the trial court in this case was accurate. Fein submitted an affidavit attesting to those facts, and attached the court orders vacating the previous orders requiring Continental to produce the disputed information.

In reply, on September 3, 2014, Chenault argued that Fein's response was "disingenuous." First, he contended, whether or not Fein used the word "required" during the telephone conference was not controlling, because his argument left the court with the "clear impression" that a order directing Continental to produce the halobutyl information would be "completely 'out of left field'" and that "ordering its production would be totally unheard of." Chenault quoted from a hearing transcript in a DeKalb County case in which Fein similarly argued he had never been required to produce this information, and that transcript is included in this record on appeal.

9

Chenault further argued that Fein's brief was misleading because the orders to produce were vacated solely as a condition of settlement.

After the September 4, 2013, hearing, the court found that Fein had intentionally made statements to the court that were "deliberately calculated to cause the Court and opposing counsel to infer a fact that was not true so as to gain advantage for his client." The trial court found that these statements violated the Georgia Rules of Professional Conduct, but declined to revoke Fein's pro hac vice status. Instead, the court restricted Fein's advocacy by designating local counsel as lead counsel for defendant Continental. The trial court also directed that Fein was not allowed to prepare or file pleadings, contact the court or its staff, or present argument or evidence at any future court proceeding, although he would be permitted to attend all future proceedings, confer with his client and local counsel, and sit at counsel table during court.

Fein first asked the trial court to issue a certificate of immediate review of its order, which the court denied. Fein nevertheless filed an application for interlocutory appeal, which this court dismissed on November 26, 2013, Case Number A14I0051. We held that an appellate court generally will not review a trial court's exercise of its discretion to grant or deny a certificate of immediate review, citing *Scruggs v.*

10

*Georgia Dept. of Human Resources*, 261 Ga. 587, 588 (1) (408 SE2d 103) (1991); *B & D Fabricators v. D. H. Blair Investment Banking Corp.*, 220 Ga. App. 373, 376 (3) (469 SE2d 683) (1996). We further held that this is not one of those extraordinary cases described in *Waldrip v. Head*, 272 Ga. 572 (532 SE2d 380) (2000), that qualify for an exception to the certificate requirement because the trial court's actions would preclude appellate review of a substantive issue. We thus dismissed the application due to Continental's failure to comply with the interlocutory procedures of OCGA § 5-6-34 (b).

Fein also filed a direct appeal of the trial court's order, and contends that the trial court's order infringes on Continental's fundamental right to counsel of its choosing and is an "unwarranted disqualification" based on a misrepresentation that never occurred. After this appeal was docketed, Chenault moved to dismiss it on jurisdictional grounds, arguing that the trial court's order regarding Fein's status as pro hac vice counsel is neither final nor otherwise appealable, citing *Board of Regents of the Univ. System of Ga. v. Canas*, 295 Ga. App. 505 (672 SE2d 471) (2009). In *Canas*, we held that

> A necessary prerequisite for a direct appeal is that the judgment or order
> appealed from be final or otherwise appealable. A judgment is directly

11

appealable as a final judgment where the case is no longer pending in the court below, except as provided in Code Section 5-6-35 (concerning cases requiring an application for appeal). . . . Generally, where an appellant fails to comply with the interlocutory appeal procedures set forth in OCGA § 5-6-34 (b) and an interlocutory ruling is not otherwise appealable, this Court lacks jurisdiction over a direct appeal filed from an interlocutory ruling and must dismiss it.

(Citation and punctuation omitted.) Id. at 506 (1).

Besides final judgments, OCGA § 5-6-34 allows "the direct appeal of judgments or orders that may have an irreparable effect on the rights of parties, such as rulings in contempt, injunction, and mandamus actions." *In re Paul*, 270 Ga. 680, 682 (513 SE2d 219) (1999). See OCGA § 5-6-34 (a) (2)-(12). Additionally, parties may directly appeal a "collateral order," even if the case remains pending in the trial court, if "the issue is substantially separate from the basic issues presented in the complaint, an important right may be lost if review had to await final judgment, and nothing further in the underlying action can affect the issue on appeal." *In re Paul*, 270 Ga. at 682-683.

Fein stated in his response to Chenault's motion to dismiss that "Appellants do not contend that the Disqualification Order is a collateral order and will not address Appellees' arguments regarding the collateral order doctrine." Instead, he argues, he

12

has a right to direct appeal based on *Stevens v. Thomas*, 257 Ga. 645 (361 SE2d 800) (1987). The Georgia Supreme Court in *Stevens* found untimely the appeal of an order disqualifying an attorney from representing two plaintiffs in a class action suit because of disciplinary rules violations, reasoning that the disqualification was a sanction that took place immediately, and also noting that the court had subsequently affirmed a contempt citation related to the sanction in *Brown v. Thomas*, 257 Ga. 68 (354 SE2d 830) (1987). *Stevens*, 257 Ga. at 647 (1). The court then remanded the case for the trial court to determine whether an attorney fee award was imposed "as a penalty for contempt or as a penalty for violations of the disciplinary rules." Id.[2]

In contrast, Chenault argues that the disqualification order is not directly appealable per *Cherry v. Coast House, Ltd.*, 257 Ga. 403 (359 SE2d 904) (1987), a case from the same term as *Stevens*. In *Cherry*, the Supreme Court held that an order disqualifying an attorney from representing a client would ordinarily require an application for interlocutory appeal pursuant to OCGA § 5-6-34 (b). *Cherry*, 257 Ga.

---

[2]The only two grounds on which the Supreme Court in *Stevens* could have relied in holding that the disqualification order was immediately appealable were either: (1) as an exception to the final order requirement, which are listed in OCGA § 5-6-34 (a), none of which are applicable here, or (2) as a collateral order reviewable before the trial court entered a final judgment or order in the case. For purposes of this analysis, however, whether Fein is actually arguing the collateral order doctrine or not is irrelevant.

13

at 405 (2). In that case, however, because summary judgment grants were before the court on direct appeal, the Supreme Court also considered the disqualification orders. *Id.*

Fein argues that the Supreme Court's pronouncement in *Stevens* controls this appeal, being the latest on the issue of whether an order disqualifying a lawyer is directly appealable before a final order or judgment is entered in the trial court. This court attempted to reconcile the conflicting cases in *Settendown Public Utility v. Waterscape Utility*, 324 Ga. App. 652, 654 (751 SE2d 463) (2013), writ of cert. and motion for reconsideration denied (Supreme Court Number S14C0436, March 3, 2014, March 28, 2014) and *Lassiter Properties v. Davidson Mineral Properties*, 230 Ga. App. 216, 217-218 (495 SE2d 663) (1998). In addition to *Settendown* and *Lassiter*, this court has held in other cases that attorney disqualification orders must be brought by application for interlocutory appeal after the issuance of a certificate of immediate review and are not directly appealable. See *Amado v. City of Atlanta*, 228 Ga. App. 791 (492 SE2d 761) (1997); *Ewing Holding Corp. v. Egan-Stanley Investments*, 154 Ga. App. 493, 496 (1) (268 SE2d 733) (1980).

In considering whether this court has jurisdiction to address the direct appeal of the trial court's order regarding Fein's pro hac vice status, however, we need not

determine whether an order disqualifying an attorney from representing a client is directly appealable or not under *Stevens*, because Fein was not disqualified. Rather, the trial court decided not to revoke Fein's pro hac admission to practice in this case, finding that to do so "would be too harsh of a remedy for the harm incurred." Instead, the trial court designated the two local counsel as lead counsel and directed that only those attorneys "prepare and file pleadings, contact the Court, or present evidence or argument at any future motions, hearings, or trials." The court further found that Fein would be permitted to attend any proceedings, confer with local counsel and his client at will, and sit at counsel table, but would not be allowed to prepare or file any documents, deal directly with the court of its staff, "or otherwise act as lead counsel."

Finally, we note that important public policy considerations compel against allowing a direct appeal in this context. In holding that an attorney's disqualification was not subject to the collateral order doctrine exception to the requirement of a final judgment or order under the Federal Rules of Civil Procedure, the United States Supreme Court observed,

> We also decline to view the disqualified attorney's personal desire for vindication as an independent ground for interlocutory appeal. An attorney who is disqualified for misconduct may well have a personal interest in pursuing an immediate appeal, an interest which need not

15

coincide with the interests of the client. As a matter of professional ethics, however, the decision to appeal should turn entirely on the client's interest.

*Richardson-Merrell v. Koller*, 472 U.S. 424, 434-435 (III) (A) (105 SCt 2757; 86 LE2d 340) (1985). The Supreme Court further held that "orders disqualifying counsel in civil cases are not completely separate from the merits of the action," because "[a]ppellate review of orders disqualifying counsel for misconduct may be entwined with the merits of the litigation as well." (Citation and punctuation omitted.) Id. at 439 (III) (B). While acknowledging that an order disqualifying counsel may impose significant hardship on litigants and "tempt courts of appeals to assert jurisdiction," the Supreme Court quoted the following from a Third Circuit case addressing the rule that only final judgments are reviewable in the federal courts:

> It would seem to us to be a disservice to the Court, to litigants in general and to the idea of speedy justice if we were to succumb to enticing suggestions to abandon the deeply-held distaste for piecemeal litigation in every instance of temptation. Moreover, to find appealability in those close cases where the merits of the dispute may attract the deep interest of the court would lead, eventually, to a lack of principled adjudication or perhaps the ultimate devitalization of the finality rule as enacted by [the legislature].

(Citations and punctuation omitted.) Id. at 440 (IV).

Chenault's motion to dismiss is hereby GRANTED. His motions for sanctions and to supplement the record are DENIED.

*Appeal dismissed. Boggs and Branch, JJ., concur.*