306 Ga. 171
FINAL COPY

S19M0969. DUKE v. THE STATE.

BETHEL, Justice.

On April 12, 2017, Ryan Alexander Duke was indicted for malice murder, felony murder, aggravated assault, burglary, and concealing the death of another in connection with the October 23, 2005, death of Tara Grinstead. Duke was initially provided counsel through the Tifton Judicial Circuit Public Defender's office, but, in September 2018, he obtained pro bono private counsel. The case was set for trial in Irwin County Superior Court, and, in the lead-up to trial, Duke filed a series of motions in the trial court seeking public funding for expert witnesses and investigators to aid his defense.

Notwithstanding the trial court's finding that Duke is indigent and that the assistance of experts is necessary to mount a proper defense, his motions were denied, and the trial court did not grant Duke's request for a certificate of immediate review pursuant to OCGA § 5-6-34 (b). In the absence of a certificate from the trial court,

Duke filed both a motion asking this Court to stay the proceedings below and an application asking the Court to exercise discretion to allow an interlocutory appeal pursuant to the analysis set forth in *Waldrip v. Head*, 272 Ga. 572, 574-577 (1) (532 SE2d 380) (2000). This Court granted Duke's request for supersedeas and stay, but we held Duke's application to appeal in abeyance pending consideration of whether *Waldrip* should be overruled. Briefing and oral argument proceeded on that issue.

For the reasons set forth below, we overrule *Waldrip* to the extent it permits this Court to disregard the requirement set forth in OCGA § 5-6-34 (b) that a party must obtain a certificate of immediate review from the trial court before pursuing an interlocutory appeal not otherwise authorized by OCGA § 5-6-34 (a). Because the trial court did not issue a certificate of immediate review in this case, this Court is without jurisdiction to consider Duke's application for interlocutory appeal. His application is therefore dismissed. The stay we previously issued in this case will dissolve when our remittitur is received by and filed in the trial

2

court.

1. *Statutory Requirements for Interlocutory Review are Jurisdictional.*

"The solemn duty devolves upon this [C]ourt to inquire into its jurisdiction to entertain each appeal and review the alleged errors of the trial court." *Gibson v. Hodges*, 221 Ga. 779, 780 (1) (147 SE2d 329) (1966), citing *Byrd v. Goodman*, 192 Ga. 466 (1) (15 SE2d 619) (1941). "Georgia law is well settled that the right to appeal is not constitutional, but instead depends on statutory authority." *Jones v. Peach Trader, Inc.*, 302 Ga. 504, 511 (III) (807 SE2d 840) (2017). "The provisions of the law respecting the procedure to be followed in perfecting appeals to this [C]ourt are jurisdictional, and unless this [C]ourt has jurisdiction of a case, it is without power or authority to render a judgment upon review." *Spivey v. Nalley*, 212 Ga. 810, 810 (96 SE2d 260) (1957). "The jurisdiction of an appellate court to consider an appeal depends upon whether the appeal is taken in substantial compliance with the rules of appellate procedure prescribing the conditions under which the judgment of the trial

3

court may be considered appealable." (Citation omitted.) *Fulton County v. State*, 282 Ga. 570, 570 (1) (651 SE2d 679) (2007).

OCGA § 5-6-34 governs what trial court orders may be reviewed immediately by an appellate court. Specifically, subsection (a) of the statute lists the trial court judgments and orders that may be appealed immediately. This list includes "[a]ll final judgments . . . where the case is no longer pending in the court below." OCGA § 5-6-34 (a) (1).[1]

Other cases can be appealed immediately only with permission from both the trial court and the appellate court. OCGA § 5-6-34 (b). When a trial court enters an order, decision, or judgment not otherwise subject to immediate appeal under OCGA § 5-6-34 (a), appeal from that order may be had only "[w]here the trial judge . . . certifies within ten days of entry thereof that the order, decision, or judgment is of such importance to the case that

---

[1] Certain types of orders, though immediately appealable, must be appealed by following the discretionary application procedure set forth in OCGA § 5-6-35. See *Grogan v. City of Dawsonville*, 305 Ga. 79, 82 (2) (823 SE2d 763) (2019).

immediate review should be had." OCGA § 5-6-34 (b). Upon such certification, "the Supreme Court or the Court of Appeals may thereupon, in their respective discretions, permit an appeal to be taken from the order, decision or judgment. . . ." Id.

Through the collateral order doctrine, we have also recognized that "a very small class of interlocutory rulings are effectively final in that they finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." (Citations and punctuation omitted.) *State v. Cash*, 298 Ga. 90, 92-93 (1) (b) (779 SE2d 603) (2015). Thus, "an order that satisfies the requirements of the collateral order doctrine is considered to be effectively final and would be appealable because it comes within the terms of a relevant statutory right to appeal final judgments," namely the right prescribed in OCGA § 5-6-34 (a) (1). Id. at 93 (1) (b). Both before and after *Waldrip*, this Court has characterized the statutory requirements for bringing an

interlocutory appeal as jurisdictional in nature — that is, if a requirement is not satisfied, the appellate court is without jurisdiction to consider the case. See, e.g., *Jones*, 302 Ga. at 510 (II) ("[A]n attempt to appeal an interlocutory order without following the procedures statutorily mandated is ineffective in conferring jurisdiction on the appellate court." (citation and punctuation omitted)); *Islamkhan v. Khan*, 299 Ga. 548, 551 (2) (787 SE2d 731) (2016) (because appellant failed to "follow the required procedures for obtaining appellate review" of interlocutory order "his attempted appeal was a nullity and incapable of activating the appellate jurisdiction of this Court"); *Cherry v. Coast House, Ltd.*, 257 Ga. 403, 404 (2) (359 SE2d 904) (1987) ("[W]hen the order appealed from is an interlocutory order, the appellate court does not acquire jurisdiction unless the procedure of OCGA § 5-6-34 (b) for interlocutory appeal is followed."); *Fife v. Johnston*, 225 Ga. 447, 447 (169 SE2d 167) (1969) ("[T]he right of appeal is not absolute, but is one based upon the conditions imposed by the General Assembly for bringing cases to the appellate courts.").

We have said the same about many other statutory requirements for appeal. See, e.g., *Crosson v. Conway*, 291 Ga. 220, 221-222 (2) (728 SE2d 617) (2012) (noting that both a timely notice of appeal filed in the trial court and a timely application for certificate of probable cause filed in this Court are necessary to invoke this Court's jurisdiction over an appeal from the denial of a petition for habeas corpus pursuant to OCGA § 9-14-52 (b)); *Cody v. State*, 277 Ga. 553, 553 (592 SE2d 419) (2004) (holding that compliance with the deadline for filing a notice of appeal set forth in OCGA § 5-6-38 (a) is an "absolute requirement" to confer jurisdiction on an appellate court); *State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan*, 299 Ga. 392, 399 (4) (788 SE2d 455) (2016) ("Appeals in cases to which OCGA § 5-6-35 (a) (1) applies must come by timely application, and if they come instead by a notice of appeal, the appellate court is without jurisdiction and must dismiss the appeal.").

The order at issue in this case is clearly not a final judgment, as Duke's case remains pending in the court below. Duke has also

made no argument before this Court that the trial court order is otherwise immediately appealable under OCGA § 5-6-34 (a).

Moreover, despite his counsel's eleventh-hour efforts at oral argument to characterize the order at issue as a collateral order, that argument plainly fails. Under the collateral order doctrine, an order that does not resolve the entire case in the trial court may be appealed immediately if it "(1) resolves an issue that is 'substantially separate' from the basic issues to be decided at trial, (2) would result in the loss of an important right if review had to await final judgment, and (3) completely and conclusively decides the issue on appeal such that nothing in the underlying action can affect it." *Fulton County*, 282 Ga. at 571 (1). Duke has acknowledged that his opportunity for appellate review of the order will not be lost if his appeal must await final judgment. Indeed, in his application before this Court, Duke argued that, should he be found guilty, the jury's verdict would likely be set aside on appeal given the importance of expert assistance to the presentation of his defense. Thus, he will not be left without a remedy in the absence of

8

immediate review of the trial court's order by this Court. Accordingly, the trial court's order is not a collateral order.[2]

Because the trial court's order denying Duke's requests for funding was not immediately appealable as a final judgment or as a collateral order, Duke's only option for seeking review of that order was to pursue an interlocutory appeal. Because the trial court did not issue a certificate of immediate review, Duke did not satisfy that statutory requirement for bringing such an appeal. Nevertheless, Duke invoked this Court's ruling in *Waldrip*, asking this Court to allow his interlocutory appeal notwithstanding the fact that no certificate of immediate review was issued by the trial court. It is against this statutory and decisional backdrop and the procedural history of this case that we reconsider our holding in *Waldrip*.

2. *Waldrip Created a Judicial Exception to the Statutory Requirements for Bringing an Interlocutory Appeal.*

In *Waldrip*, the petitioner, who had been convicted of murder, filed a habeas corpus petition alleging ineffective assistance of

_____

[2] Because failure to satisfy any of the three prongs of the test is fatal, we need not consider whether Duke has met the first or third prong.

9

counsel. 272 Ga. at 572. The warden against whom the petition was filed sought the litigation files of the petitioner's trial and appellate counsel. Id. Through a series of orders, the habeas court granted the warden's motion to compel access to the litigation files. Id. The petitioner requested a certificate of immediate review, which the habeas court did not grant. Id. at 573. The petitioner then filed with this Court both an application for interlocutory appeal and a notice of appeal directed to this Court. Id. This Court concluded that the habeas court's order was not immediately appealable under the collateral order doctrine. Id. at 574 (1). As to the petitioner's application for interlocutory review, this Court recognized that, because "discovery orders generally are interlocutory, our appellate courts ordinarily obtain jurisdiction over them through the application process . . . [which] requires the trial court to certify that its order is 'of such importance to the case that immediate review should be had.'" Id. at 574-575 (1) (quoting OCGA § 5-6-34 (b)). We noted that "[t]he purpose of the certificate requirement is to permit trial courts, rather than parties, to regulate the litigation." Id. at 575

(1) (citing *Scruggs v. Ga. Dept. of Human Resources*, 261 Ga. 587 (408 SE2d 103) (1991)).

However, without reference to any authority, this Court went on to state that the purpose of the certificate requirement "is not to permit trial courts to deprive appellate courts of their jurisdiction." *Waldrip*, 272 Ga. at 575 (1). And thence this Court stepped off the solid stone path of the statutory text. Noting that "[u]nder our present rules, strict adherence to the certificate requirement provides no alternative procedure in the event that the appellate court disagrees with the trial court's decision that 'immediate review should be had,'" id., the Court set about inventing a rule permitting deviation from such strict adherence:

> Because of this defect in the interlocutory review process, this Court on rare occasions has assumed jurisdiction to consider an appeal despite the absence of a final judgment or a certificate of immediate review from the trial court. We have chosen to bypass the statutory requirements for interlocutory review and address the substantive issues raised on appeal when the case presented an important issue of first impression concerning a recently enacted statute for which a precedent was desirable, dismissal would deny the litigant the right of appellate review in this state, or

11

consideration of the trial court order as "final" served the interest of judicial economy. In effect, this Court has granted the application for interlocutory review in those exceptional cases that involve an issue of great concern, gravity, and importance to the public and no timely opportunity for appellate review.

(Citations omitted.) Id. at 575 (1).

The Court went on to assert that

both the state constitution and code give this Court authority to establish rules of appellate procedure for this state. The constitution states that each court may exercise the powers "necessary in aid of its jurisdiction" and gives the Supreme Court express responsibility for administering the entire judicial system. The code gives this Court authority to "establish, amend, and alter its own rules of practice." Even if the legislature had not expressly provided this authority, this Court has the inherent power to maintain a court system that provides for the administration of justice in an orderly and efficient manner.

(Citations omitted.) Id. at 575-576 (1).

The Court announced that we have "the power to consider appeals of interlocutory orders when we disagree with the trial court concerning the need for immediate appellate review of an interlocutory order." *Waldrip*, 272 Ga. at 576 (1). We justified this action by noting that the adoption of this "rule" was consistent with

a precedent of the North Carolina Supreme Court and national standards developed by the American Bar Association, which had recommended that "appellate courts retain the discretion of interlocutory review when it would materially advance the end of the litigation, protect a party from irreparable harm, or clarify an issue of public importance." (Citation omitted.) Id.

The Court went on to express its disagreement with the trial court's decision not to grant the petitioner's request for a certificate of immediate review in that case. Further, we explained that we granted the petitioner's interlocutory application because the circumstances presented "one of those rare cases in which we exercise our discretion to review an interlocutory order without a trial court certificate because the appeal presents a legal issue of great concern and importance and rights may be lost if review is delayed until a final judgment is entered." *Waldrip*, 272 Ga. at 577 (1).

The opinion in *Waldrip* was embraced by a bare majority of the Court. The majority opinion drew a sharp dissent authored by

Justice Carley and joined by Justices Thompson and Hines, who argued, among other things, that the Court lacked the authority to bypass the statutory prerequisites for an interlocutory appeal. Id. at 580-583 (Carley, J., dissenting). Justice Carley continued his criticism of the decision and the broad discretion it vested in the Court in a dissent in *Hicks v. Scott*, 273 Ga. 358 (541 SE2d 27) (2001).[3]

3. *The Rationales Articulated in Waldrip are Unpersuasive.*

We now examine in turn the various rationales articulated by the *Waldrip* majority in support of its decision. Through such examination, we discover that *Waldrip* rests on an unsturdy

---

[3] *Hicks* was a habeas corpus case in which this Court granted the appellant's application for a certificate of probable cause despite the fact that the application was not timely filed because "the habeas court failed to correctly inform petitioner of the proper procedure for obtaining appellate review of its order." (Citation and punctuation omitted.) 273 Ga. at 359. In dissent, Justice Carley argued that, under *Fullwood v. Sivley*, 271 Ga. 248, 250-251 (517 SE2d 511) (1999), the Court lacked jurisdiction over the petition because of the appellant's failure to comply with the statutory requirement. *Hicks*, 273 Ga. at 360 (Carley, J., dissenting). This Court later explicitly overruled *Hicks*, holding that an appellant's failure to comply with the statutory requirement for obtaining a certificate of probable cause deprived this Court of jurisdiction and could not be excused due to a trial court's failure to inform the appellant of such requirements. *Crosson*, 291 Ga. at 221-222 (2).

14

foundation.

(a) *Appellate Court Jurisdiction is Established by the Georgia Constitution and Statutes.*

The *Waldrip* majority divined the necessity of its holding from the absence of any mechanism allowing this Court to immediately review the decision of a trial court in a case that we deem to present an issue of gravity and concern. Curiously, it stated that its holding was necessary because the certificate of immediate review requirement in OCGA § 5-6-34 (b) was not designed to "permit trial courts to deprive appellate courts of their jurisdiction." *Waldrip*, 272 Ga. at 575 (1). In the matter now before us, Duke argues that OCGA § 5-6-34 (b)'s requirement that a litigant obtain a timely certificate of immediate review from the trial court unfairly places control of the Supreme Court's jurisdiction in the hands of the trial court.

But the Court's jurisdiction is not controlled by the trial court; it is fixed by the Georgia Constitution and the statutory law. As we noted at the outset, statutory procedural requirements for appeal, if not complied with, deprive the State's appellate courts of jurisdiction

15

to consider the case at hand. See, e.g., *Jones*, 302 Ga. at 510 (II); *Islamkhan*, 299 Ga. at 551 (2); *Cherry*, 257 Ga. at 404 (2); *Fife*, 225 Ga. at 447. See also *American Gen. Fin. Svcs. v. Jape*, 291 Ga. 637, 644 (732 SE2d 746) (2012) (Nahmias, J., concurring specially) (OCGA § 5-6-34 (b) "is a *jurisdictional* law by which the General Assembly has limited the authority of Georgia's appellate courts to hear certain cases." (emphasis in original)). That the General Assembly, in OCGA § 5-6-34 (b), has made the trial court the initial gatekeeper of interlocutory appeals does not change this analysis. Moreover, absent any claim by a litigant that adherence to the procedure for obtaining interlocutory review deprives the litigant of some right under federal law or the Georgia Constitution, this Court must adhere to the procedure established by the General Assembly. See U.S. Const. Art. VI ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, Any Thing in the

16

Constitution or Laws of any State to the Contrary notwithstanding."); *Gable v. State*, 290 Ga. 81 (720 SE2d 170) (2011) (explaining that untimely or "out of time" appeals may be considered not for equitable reasons but only to avoid or remedy a constitutional violation concerning the appeal); *Fife*, 225 Ga. at 447 ("Whether wise or unwise, as long as the Act does not offend the Constitution, courts must abide by it.").

While attempting to remedy one perceived problem, *Waldrip* actually created several others. By announcing this Court's discretion to override the requirements of OCGA § 5-6-34 (b), *Waldrip* injected this Court into a role that the General Assembly entrusted exclusively to the trial court; namely, deciding whether, in the first instance, an issue merits interlocutory consideration. By requiring the prompt, affirmative assent of the trial court before an interlocutory appeal can proceed, OCGA § 5-6-34 (b) allows the trial court to manage litigation before it to a conclusion except in those circumstances in which the trial court believes that the issues presented by a litigant need clarification by an appellate court *before*

17

the case proceeds. Aside from cases covered by OCGA § 5-6-34 (a), absent a timely certificate of immediate review, a litigant's opportunity for appellate review arises only once a final order in the case is issued. See *Turner v. Harper*, 231 Ga. 175, 175 (200 SE2d 748) (1973). *Waldrip* upsets this arrangement.

Moreover, despite the claims of Duke and the *Waldrip* majority to the contrary, OCGA § 5-6-34 (b) does not bar appellate courts from deciding any cases for which they have jurisdiction. The statute merely outlines specific circumstances in which that jurisdiction may attach before the issuance of an order that is immediately appealable under OCGA § 5-6-34 (a). A litigant's opportunity for appellate review is not denied by this process; it is, at worst, delayed in a way specifically designed by the General Assembly.

This is unequivocally the scheme adopted by the General Assembly. As we observed before *Waldrip*, the General Assembly placed "unfettered discretion" and "carte blanche authority" in the trial court to issue or deny a certificate of immediate review, and "there are no clearly delineated specifications or ascertainable

18

standards [of that exercise of discretion and authority] for appellate review." (Citations and punctuation omitted.) *Scruggs*, 261 Ga. at 588 (1). "For these reasons this Court has held that it will not review the discretion vested in the trial court in granting or refusing a certificate for immediate review of interlocutory rulings." (Citation and punctuation omitted.) Id.

While, in some cases, the interests of judicial economy may not be served when a reversible error is addressed by appellate courts only after the entry of a final judgment, that is not a problem this Court is empowered to remedy. The General Assembly has entrusted the first exercise of authority to allow interlocutory review to trial courts, and it is not for this Court to override that decision. As this Court has previously noted "the certificate of immediate review is not 'surplusage' but is instead an essential component of a trial court's power to control litigation." (Citation omitted.) *Scruggs*, 261 Ga. at 589 (1).

(b) *Waldrip Cited Unsound and Inapposite Case Law.*

The *Waldrip* majority opinion cited unpersuasive authority in

support of its holding. In addition to relying upon standards enacted by the American Bar Association and a holding of the North Carolina Supreme Court, neither of which have been granted any authority under the Georgia Constitution, the key premise of *Waldrip*, that this Court has the discretion to "bypass the statutory requirements for interlocutory review," was based on a case in which the Court deviated from its longstanding practice of resolving jurisdictional matters before proceeding to the merits as well as a pair of cases with very narrow holdings that *Waldrip* misapplied.

The *Waldrip* majority opinion first cited *In re Bd. of Twiggs County Commrs.*, 249 Ga. 642, 643 (292 SE2d 673) (1982), for the proposition that, despite procedural defects, review is necessary "when the case present[s] an important issue of first impression concerning a recently enacted statute for which a precedent [is] desirable." *Waldrip*, 272 Ga. at 575 (1). In that case, it was not clear that the appellant had complied with the statutory requirements for appeal. *Twiggs County Commrs.*, 249 Ga. at 642 (1). Even though that issue called into question the Court's jurisdiction over the case,

the Court ultimately elected to pretermit those issues and to decide the appeal on the merits. Id. at 643 (1).

*Twiggs County Commrs.* cited the provisions of former Code Ann. § 6-905 (Ga. L. 1965, pp. 18, 40) for the proposition that it should reach the merits of the case without resolving the jurisdictional issue. That Code section provided that the act relating to appellate procedures "shall be liberally construed so as to bring about a decision on the merits of every case appealed, and to avoid dismissal of any case or refusal to consider any points raised therein, except as may be specifically referred to herein." Id. This language essentially mirrors the language of current OCGA § 5-6-30.

Former Code Ann. § 6-905 was enacted as part of the Appellate Practice Act of 1965. Shortly after its enactment, we noted that the Act "prescribes the conditions as to the right of a party litigant to have his case reviewed. We view these prescribed conditions as jurisdictional." (Punctuation omitted.) *Wood v. Atkinson*, 229 Ga. 179, 180 (190 SE2d 46) (1972). More recently, we have noted that, although the Act requires certain filings to be made in order to

invoke the Court's jurisdiction, "this Court alone has the authority to determine whether such filing is sufficient to invoke its jurisdiction." *Hughes v. Sikes*, 273 Ga. 804, 805 (1) (546 SE2d 518) (2001) (interpreting current OCGA § 5-6-30). Such authority has been used to determine, for instance, that an appellant need not list in his notice of appeal every order being challenged on appeal in order to comply with the requirements of OCGA §§ 5-6-34 (d) and 5-6-37. See *Mateen v. Dicus*, 281 Ga. 455, 456 (637 SE2d 377) (2006) (construing the language of OCGA § 5-6-37 to mean that an appellant need only include in the notice of appeal the single judgment that entitles the appellant to take an appeal).

But the language of former Code Ann. § 6-905 (and current OCGA § 5-6-30) does not mean that an appellate court can simply bypass the statutory requirements for bringing an appeal in order to reach the merits — if it did, every statute creating a requirement for bringing an appeal would be nothing more than a legislative suggestion. As we have discussed above, we have many precedents holding to the contrary. See, e.g., *Crosson*, 291 Ga. at 221 (2) ("[T]his

Court cannot denigrate the General Assembly's determination by considering either a timely notice of appeal or a timely application as a mere procedural nicety." (citation and punctuation omitted)). Instead, this Code section instructs the Court to ensure that meaningful appellate review is available where an appellant has substantially complied with the statutory requirements for appeal.

In *Twiggs County Commrs.*, this Court made no attempt to discern whether those requirements were met. We instead pretermitted the jurisdictional issue and moved straight to the merits of the case. This was error. As this Court has held numerous times before and since it decided *Twiggs County Commrs.*, this Court must satisfy itself that it has jurisdiction before deciding the merits of a case. See, e.g., *Brock v. Hardman*, 303 Ga. 729, 729 (1) (814 SE2d 736) (2018); *State of Ga. v. Singh*, 291 Ga. 525, 526 (731 SE2d 649) (2012); *Arrington v. Reynolds*, 274 Ga. 114, 114 (549 SE2d 401) (2001); *Collins v. American Tel. & Telegraph Co.*, 265 Ga. 37 (456 SE2d 50) (1995); *Collins v. State*, 239 Ga. 400, 401 (1) (236 SE2d 759) (1977); *Carparking, Inc. v. Chappell's Inc.*, 213 Ga. 637 (100

SE2d 896) (1957); *Dade County v. State of Ga.*, 201 Ga. 241 (39 SE2d 473) (1946); *Welborne v. State*, 114 Ga. 793 (40 SE 857) (1902). Questions pertaining to an appellate court's jurisdiction cannot be sidestepped or pretermitted, as they go to the threshold question of whether the appellate court has the authority to decide the merits of the case. See *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (805 SE2d 79) (2017) (holding that applicability of sovereign immunity to claims brought against the State is a threshold jurisdictional issue that must be resolved before reaching the merits). Where an appellate court does not have jurisdiction because the appellant has not complied with the statutory requirements for bringing the appeal, the appellate court must dismiss the appeal.

Notably, *Twiggs County Commrs.* has been cited for this proposition only once — by the *Waldrip* majority. Because *Twiggs County Commrs.* deviated so sharply from the Court's longstanding precedents, including in cases decided after *Twiggs County Commrs.*, the *Waldrip* majority should not have relied upon it.

Indeed, *Twiggs County Commrs.* stands far afield from our

24

body of cases requiring this Court and the Court of Appeals to inquire into our respective jurisdictions, even if the issue is not raised by the parties. In light of our case law to the contrary, especially cases decided by this Court after *Twiggs County Commrs.*, it is clear that *Twiggs County Commrs.* is not good law to the extent it suggests that jurisdictional issues need not be resolved by an appellate court before it considers the merits of an appeal. See *White v. State*, 305 Ga. 111, 122 (3) n.10 (823 SE2d 794) (2019) (noting that a high court generally follows its decision in the most recent case "which must have tacitly overruled any truly inconsistent holding" (citation and punctuation omitted)); *Houston v. Lowes of Savannah, Inc.,* 235 Ga. 201, 203 (219 SE2d 115) (1975) (holding that, in the event two precedents of the Supreme Court conflict, the more recent case is controlling, because the case decided by this Court "later in time is the more persuasive decision").

The *Waldrip* majority opinion also cited *G. W. v. State of Ga.*, 233 Ga. 274 (210 SE2d 805) (1974), for the proposition that review is necessary when "dismissal would deny the litigant the right of

appellate review in this state." *Waldrip*, 272 Ga. at 575 (1). That case concerned an order transferring a juvenile to law enforcement authorities of another state. This Court held that, unlike a transfer order between juvenile authorities of different counties in Georgia (an interim order), an order transferring a juvenile out of state was the final judgment to be entered in a case by a Georgia court. Thus, such an order should be deemed a final order and subject to appellate review.

*Waldrip*'s reliance on *G. W.* was misplaced. *G. W.* did not dispense with the certificate requirement of OCGA § 5-6-34 (b), nor did it dispense with *any* statutory requirement for appeal. The *Waldrip* court was correct that *G. W.* preserved a right for the litigant to pursue an appeal in Georgia, but in doing so, it found only that an immediate appeal could be brought because the order in question was properly construed as a final judgment within the existing statutory framework, namely OCGA § 5-6-34 (a) (1). *G. W.*, 233 Ga. at 275.

Finally, the *Waldrip* majority opinion relied upon this Court's

26

decision in *Isaacs v. State*, 257 Ga. 798 (364 SE2d 567) (1988), for the proposition that review was necessary when "consideration of the trial court order as 'final' served the interest of judicial economy." *Waldrip*, 272 Ga. at 575 (1). As with *G. W.*, the *Waldrip* majority's reliance on this case was misplaced. While *Waldrip* correctly noted that, in *Isaacs*, this Court considered the interests of judicial economy in treating the order at issue as final, nowhere in *Isaacs* does the Court suggest that a statutory requirement can be bypassed in order to reach the merits of an appeal. *Isaacs* instead deemed the order at issue to be a final order under the collateral order doctrine. See *Waldrip*, 272 Ga. at 581 (Carley, J., dissenting). As it did in *G. W.*, this Court applied an existing statutory framework to the jurisdictional question before reaching the merits of the appeal. The *Waldrip* majority did not follow the example of *G. W.* or *Isaacs*.

(c) *Waldrip Relies on Inapplicable Constitutional and Statutory Authority*.

*Waldrip* also stated that the Court's authority under the

27

Georgia Constitution and various statutes permits it to accept an interlocutory appeal in the absence of a certificate of immediate review. This claim fails even a cursory examination.

The *Waldrip* majority noted that, under Article VI, Section I, Paragraph IV and Article VI, Section IX, Paragraph I of the Georgia Constitution, this Court is empowered to exercise powers "necessary in aid of its jurisdiction" and to administer the entire state judicial system. The *Waldrip* majority attempted to buttress its argument by also citing OCGA § 15-2-8 (5)'s grant of authority to the Court to "establish, amend, and alter its own rules of practice."

Outside of *Waldrip*, we have not had many occasions to examine the contours of these grants of judicial authority. However, although this Court is empowered to establish rules of appellate practice for itself and, to some extent, for the other courts of this State, we do not have the authority to create our own jurisdiction. As we held in *Gable*, 290 Ga. at 85 (2) (b), "courts have no authority to create equitable exceptions to jurisdictional requirements imposed by statute." (Citation and punctuation omitted.) Our

28

appellate courts "may excuse compliance with a statutory requirement for appeal only where necessary to avoid or remedy" a violation of federal law or the Georgia Constitution concerning the appeal, such as when a criminal defendant does not file a timely notice of his first appeal from a conviction due to counsel's ineffective assistance. Id. (citing *Rowland v. State*, 264 Ga. 872 (452 SE2d 756) (1995)). See also *Crosson*, 291 Ga. at 222 (explaining that "we are wholly without any constitutional or other authority to waive compliance with this [statutory] jurisdictional mandate").

But *Waldrip* permits this Court to intervene in a far wider range of cases than that. Although "cases that involve an issue of great concern, gravity, and importance to the public," *Waldrip*, 272 Ga. at 575 (1), may sometimes involve questions of an appellant's rights under federal law or the Georgia Constitution, those questions rarely turn on whether the litigant will face the denial of any such rights merely by deferring appellate review until after the entry of a final judgment in the case. In such cases, as we discussed in *Gable*, statutory strictures must give way to constitutional

29

guarantees. But in the absence of a colorable claim that a litigant's rights are at risk in the face of adherence to statutory appellate requirements, such requirements must be adhered to by this Court. Nothing in the constitutional or statutory provisions establishing this Court's rule-making and administrative authority suggests otherwise. In short, *Waldrip* "constitutes blatant judicial usurpation of the legislative function, and cannot be considered to be the legitimate exercise of inherent judicial authority." *Waldrip*, 272 Ga. at 582 (Carley, J., dissenting).

(d) *Waldrip Was Wrongly Decided.*

As the above review of *Waldrip*'s holding and stated reasoning demonstrates, the *Waldrip* majority's efforts to correct a perceived "defect" in the statutory interlocutory review process extended beyond the Court's constitutional and statutory authority and were based on unsound and inapposite precedents. In handing down *Waldrip*, this Court enlarged its own power at the expense of the power the General Assembly vested in trial courts to determine when an interlocutory appeal should be permitted. Thus, we

determine today that *Waldrip* was wrongly decided. However, because *Waldrip* remains binding precedent, we must decide whether the doctrine of stare decisis counsels against overruling *Waldrip* even though we have determined that its reasoning was unsound.

4. *Stare Decisis Does Not Support Upholding Waldrip.*

Under the doctrine of stare decisis, courts generally stand by their prior decisions, because doing so "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." (Citation and punctuation omitted.) *State v. Hudson*, 293 Ga. 656, 661 (748 SE2d 910) (2013). Stare decisis, however, is not an "inexorable command." Id. "Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes." *City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 733 (13 SE 252) (1891). In reconsidering our prior decisions, "we must balance the importance

31

of having the question *decided* against the importance of having it *decided right*." (Emphasis in original.) *State v. Jackson*, 287 Ga. 646, 658 (5) (697 SE2d 757) (2010). To that end, we have developed a test that considers "the age of the precedent, the reliance interests at stake, the workability of the decision, and, *most importantly*, the soundness of its reasoning." (Emphasis supplied.) Id.

The stare decisis factors counsel that *Waldrip* should be overruled. We have already established that the *Waldrip* majority's reasoning was unsound and unmoored from this Court's consistent and longstanding application of statutory appeal requirements enacted by the General Assembly. In short, *Waldrip* was very wrong. Such significant unsoundness cuts "heavily in favor of overruling [*Waldrip*]." *Olevik v. State*, 302 Ga. 228, 245 (2) (c) (iv) (806 SE2d 505) (2017). As for the age factor, *Waldrip* was decided 19 years ago, "and we have overruled decisions older than that." Id.

Likewise, *Waldrip* does not involve substantial reliance interests. The issue addressed by *Waldrip* "is one of appellate procedure, not contract, property, or other substantive rights in

32

which anyone has a significant reliance interest." (Citation and punctuation omitted.) *Southall v. State*, 300 Ga. 462, 467 (1) (796 SE2d 261) (2017).

Moreover, *Waldrip* is "neither ancient nor entrenched" within our judicial system. *Southall*, 300 Ga. at 468 (1). Although *Waldrip* potentially expands the opportunity for a litigant to bring an interlocutory appeal, the authority this Court claimed for itself in *Waldrip* has very rarely been cited in the years since *Waldrip* was decided. See, e.g., *Bunn v. State*, 284 Ga. 410, 411 (667 SE2d 605) (2008) (declining to grant interlocutory review and noting that *Waldrip* factors had not been satisfied); *Smith & Wesson Corp. v. City of Atlanta*, 273 Ga. 431, 435 (3) (543 SE2d 16) (2001) (noting appellant's citation of *Waldrip* but stating that, contrary to *Waldrip*, "[t]his Court has clearly stated that in reviewing cases on appeal it will not pass upon questions on which no final ruling has ever been made by the trial judge or where there is no compliance with the requirement of OCGA § 5-6-34 (b) that the trial court certify its order for immediate review"). Indeed, in the thousands of cases involving

33

interlocutory applications and appeals over the past two decades, it appears that *Waldrip* was invoked by this Court only once to allow an appeal. See *Williams v. State*, Case No. S05M0071, 2004 Ga. LEXIS 826 (2004) (unpublished order, over dissent of Justices Carley and Hines, granting emergency interlocutory appeal under *Waldrip* in the absence of a timely certificate of immediate review to consider trial court's appointment of counsel in death penalty case). We could locate no published opinion of the Court of Appeals indicating that it had granted an interlocutory appeal on the basis of *Waldrip*, and we were able to find only a single instance in which the Court of Appeals explicitly declined an appellant's request to do so in a published opinion. See *Fein v. Chenault*, 330 Ga. App. 222, 227 (767 SE2d 766) (2014).

Moreover, Duke has not argued — and we find no independent basis for concluding — that he would be deprived of his opportunity for appellate review in the absence of the *Waldrip* precedent. As we noted above, a faithful application of the requirements of OCGA § 5-6-34 (b) at most delays Duke's opportunity for appellate review in

34

this case; it does not foreclose it.

Finally, *Waldrip* is unworkable for both appellate and trial courts. First, the reach of its rationale is limitless, as, contrary to the express will of the General Assembly, *Waldrip* places appellate courts — and only appellate courts — in the position of determining which cases pending in the trial courts of this State present issues of such gravity and importance that appellate intervention is warranted. And, although the *Waldrip* majority described this authority as merely "discretionary," nothing in our law establishes the outer boundaries of appellate courts' discretion to exercise this power or gives litigants or trial courts any meaningful indication of how and under what circumstances appellate courts will exercise the power to disregard clear statutory requirements.

Moreover, the discretion this Court claimed for appellate courts in *Waldrip* would seem to apply equally with regard to any statutory requirement for appeal. The presence of such discretion would require appellate courts, in every instance in which a statutory requirement has not been complied with by an appellant,

35

to exercise its discretion in determining whether an appeal should nonetheless be permitted, whether or not the issue is raised by the parties. Such unfettered discretion would enlarge appellate courts' power to entertain appeals that they are statutorily barred from considering while also significantly expanding their workload.

*Waldrip* presents significant workability problems for trial courts, as well. Because a trial court has no means of predicting when a case may be snatched from its docket pursuant to a *Waldrip* review, the trial court may find itself (as it did in the matter before us) with jurors and witnesses summoned for trial but no case to try. By permitting an interlocutory appeal to proceed in the absence of a certificate of immediate review, *Waldrip* thus divests trial courts of one of their essential tools for controlling litigation before them. *Scruggs*, 261 Ga. at 589 (1).[4]

As this Court has made clear, "[t]he scheme for appellate

---

[4] At oral argument, Duke's counsel suggested that this case presented an opportunity for this Court to refine the *Waldrip* analysis. Of course, this implicit admission that *Waldrip* is in need of refining only emphasizes the unworkable nature of *Waldrip* as it was decided.

36

interlocutory review is legislative in nature," and, "[i]n the event that the General Assembly determines that the established framework does not adequately safeguard the interests" of litigants in particular classes of cases, "it is for that body to change it." *Rivera v. Washington*, 298 Ga. 770, 778 (784 SE2d 775) (2016). We reiterate this core separation of powers principle today. If and to the extent the General Assembly determines that requiring a trial court to issue a timely certificate of immediate review before an interlocutory appeal may be pursued constitutes a "defect" in the interlocutory review process or is otherwise contrary to the public interest, then the General Assembly is free to change or abolish that requirement. But this Court lacks that authority, and we should never have claimed it.

Accordingly, we overrule *Waldrip* to the extent it permits this Court to disregard the requirement set forth in OCGA § 5-6-34 (b) that a litigant must obtain a certificate of immediate review from the trial court before pursuing an interlocutory appeal from an order not subject to immediate appeal under OCGA § 5-6-34 (a). More

37

broadly, we also disapprove any reading of *Waldrip* and any other decision of this Court to the extent such reading suggests that appellate courts are free to disregard a statutory requirement for appeal in the absence of an articulated and colorable claim that the application of such statute will deprive a litigant of a right under federal law or the Georgia Constitution.

In light of the foregoing, because the trial court did not issue a certificate of immediate review in this case, this Court is without jurisdiction to consider Duke's application for interlocutory appeal.[5] His application is therefore dismissed.[6]

*Application dismissed. All the Justices concur.*

---

[5] As we noted in our order granting Duke's request for supersedeas and stay and directing briefing regarding the viability of *Waldrip*, the underlying merits of Duke's application for interlocutory appeal appear to present difficult, complex, and important constitutional questions for which there is no controlling legal precedent. Even though the merits of these issues may be litigated on appeal in the event Duke is convicted, because the trial court did not issue a certificate of immediate review, we are without jurisdiction to consider Duke's application, and, therefore, we cannot reach any of the merits of the arguments he raises at this time.

[6] The stay we previously issued in this case will dissolve when our remittitur is received by and filed in the trial court. See *Green Bull Ga. Partners v. Register*, 301 Ga. 472, 475 n.6 (801 SE2d 843) (2017).

Decided June 10, 2019.

Murder. Irwin Superior Court. Before Judge Reinhardt.

<u>John S. Gibbs III; The Merchant Law Firm, John B. Merchant III, Ashleigh B. Merchant</u>, for appellant.

<u>C. Paul Bowden, District Attorney, Bradford L. Rigby, Special Assistant District Attorney, Jennifer D. Hart, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Assistant Attorney General</u>, for appellee.